**Ethel B. JOHNSON, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

No. 92–1227.

United States Court of Veterans Appeals.

Nov. 28, 1995.

Michael Kovaka, Washington, DC, was on the brief for appellant.

Mary Lou Keener, General Counsel, Atlanta, GA; Norman G. Cooper, Assistant General Counsel; Adrienne Koerber, Deputy Assistant General Counsel; and John C. Winkfield, Washington, DC, were on the brief for appellee.

Before NEBEKER, Chief Judge, and MANKIN and STEINBERG, Judges.

STEINBERG, Judge:

The appellant, Ethel B. Johnson, appeals a June 15, 1992, Board of Veterans' Appeals (BVA or Board) decision denying her claim of entitlement to dependency and indemnity compensation (DIC). Record (R.) at 11. Both parties submitted briefs. On April 28, 1995, the Court issued an order staying this case pending the disposition of *Robinette v. Brown*, 8 Vet.App. 69 (1995), and *Edenfield v. Brown*, 8 Vet.App. 384 (1995). Those cases were recently decided on July 14, 1995, and November 1, 1995, respectively, *Robinette*, 8 Vet.App. 69 (1995); *Edenfield*, 8 Vet.App. 384 (1995) (en banc), and this case will now proceed. For the reasons that follow, the Court will affirm the decision of the Board.

## I. Background

The appellant is the widow of World War II veteran James L. Johnson. R. at 145, 294. The veteran served on active duty in the U.S. Army from December 1942 to November 1943. R. at 7. The report of his August 1942 induction physical examination noted a history of asthma and a blood pressure reading of 150/90. R. at 16, 18. During service, the veteran was hospitalized three times with asthma and bronchitis. R. at 24, 26, 31, 53. A November 9, 1943, medical examination report indicated "normal size" and "sounds are normal" as to the heart. R. at 55. The veteran's blood pressure was 132/94. On November 30, 1943, he was discharged for disability due to moderate chronic bronchial asthma which had existed prior to service. R. at 66.

In June 1944, the veteran filed with a Veterans' Administration (now Department of Veterans Affairs) (VA) regional office (RO) an application for compensation or pension for "asthma—greatly aggravated by service". R. at 71–74. A November 1944 VA medical examination report indicated a diagnosis of chronic bronchial asthma and chronic bronchitis; the examining physician noted: "There is a history of [c]ardiac embarrassment during moderately severe attacks [and the] man appears ill from a recent heavy attack of asthma." R. at 80–81, 89. (To "embarrass" is "to impede the function of; to obstruct". DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 542 (27th ed. 1988).) The physician noted "no pathological signs" as to "cardio-vascular system". R. at 83. In December 1944, the VARO awarded service connection for moderate chronic asthma with bronchitis, rated 30% disabling. R. at 93.

The veteran applied for an increased disability rating in August 1948 because his asthma made it "impossible to hold a job" (R. at 131) and submitted an August 1948 letter from a private physician, Dr. Kallman, who stated that he was treating the veteran for bronchial asthma and opined that the veteran was "unable to hold a position due to his bronchial paroxysms." R. at 133. A December 30, 1948, VA medical examination report noted "normal" as to "cardio-vascular system" and diagnosed moderately severe chronic bronchial asthma. R. at 137, 143. In February 1949, the RO confirmed the previous 30% disability rating. R. at 150.

The veteran again applied for an increased rating for his service-connected disability in November 1977, and requested pension benefits in January 1978, citing a heart condition and an inability to work. R at 158, 200. A February 1978 VA hospital medical examination report indicated that he had no history of angina and that his heart showed a normal sinus rhythm and no cardiomegaly. R. at 186. The examiner noted: "He does *not have* much trouble with his heart[;] however[,] he does not know what is wrong with his heart". *Ibid.* (underlining in original). The "diagnosis" section of the report stated that "no heart disease was found". R. at 198. As to the respiratory system, the examiner noted that the veteran was "uncooperative"; no

rales or rhonchi were noted; chronic bronchial asthma was not confirmed. R. at 197–98. A March 1978 RO decision determined that the veteran showed no evidence of bronchial asthma "at this time" and that his "service[-]connected bronchial asthma condition is protected by the operation of law", *see* 38 U.S.C. § 1159 (service connection "which has been in force for ten or more years shall not be severed on or after January 1, 1962"). The RO also denied pension benefits, finding that his disabilities were not sufficient to keep him from engaging in "substantial gainful employment". R at 202–03. A May 1978 VA medical examination report found no heart disease and diagnosed: "History [of] bronchial asthma, chronic, in remission". R. at 213, 219.

In October 1978, the veteran again filed with the RO a request for "pension benefits". R. at 238. He stated that he had been totally disabled since August 1977, and had not worked since then except for doing odd jobs that his health would permit. R. at 240. A November 1978 VA medical examination report indicated no heart disease (R. at 268), and a December 1978 RO decision granted non-service-connected pension benefits based on the non-service-connected conditions that were found. R. at 270–71.

The RO notified the veteran in January 1979 that he had been granted non-service-connected pension because his disabilities were "severe enough" to "prevent . . . gainful employment", and that the higher pension benefit would be substituted for his service-connected disability compensation benefit because under applicable law he could not receive both. R. at 273. The veteran's pension payments continued until his death in January 1990. R. at 277–90, 294. The veteran's January 1990 Certificate of Death listed the immediate cause of death as "sudden death—ventricular fibrillation 30 min[utes]" and "previous myocardial infarction 1 [year]"; "congestive heart disease" was listed under "other significant conditions contributing to death". R. at 294. The death certificate indicates that an autopsy was not performed. *Ibid.*

In February 1990, the appellant submitted to the RO applications for DIC and burial benefits. R. at 296–97, 299–302. The RO, in March 1990, awarded burial expenses for a non-service-connected death (R. at 311) and denied DIC, stating that the veteran's active military service did not materially contribute to or hasten his death (R. at 315–16). In April 1990, the appellant received a payment of accrued benefits (R. at 318); death pension was denied because the appellant's income exceeded the death-pension income limit for a surviving spouse with no children (R. at 320).

After filing an appeal to the BVA (R. at 322), the appellant testified under oath at a May 7, 1991, RO hearing that in-service conditions such as dirt, dust, sleeping on damp ground, and strenuous marching had caused the veteran to collapse before his emergency hospital admission in February 1943, and that he had told her that at that time he had experienced chest pain, tightness in the chest, and shortness of breath (R. at 341–43). The appellant opined that his collapse might have been caused by a heart attack, and that asthma, by decreasing the intake of oxygen and the flow of oxygen to the heart, causes the heart to work harder and could eventually lead to high blood pressure and heart disease. R. at 343–44. She testified: "The heart catheterization test given by Dr. Karen shows that Mr. Johnson had an attack in February of 1981 [which] was not his first. He says scar tissue shows that he had a heart attack prior to this time, possibly 10, 20, 30 years maybe more." R. at 344. Furthermore, she averred that the veteran had taken nitroglycerin tablets prescribed by his VA physicians beginning in the late 1970s, and had often had to take them for chest pain associated with an asthma attack. R. at 346–47.

The VA hearing officer, in a May 20, 1991, decision, affirmed the RO's denial of DIC. R. at 355. The appellant's representative, in a March 1992 written presentation to the Board, noted that in the appellant's hearing testimony she had referred to treatment by Dr. "Karen", and stated that these treatment records should be secured by VA and associated with her claim folder. R. at 368. (The record on appeal does not contain any record

of treatment by Dr. "Karen", or any indication that VA sought such treatment records.)

In the June 15, 1992, decision here on appeal, the BVA found that the appellant's DIC claim was not well grounded. R. at 7. In its discussion of the reasons or bases for its decision, the Board noted that, with the exception of "a single elevated blood pressure reading of 132/94", SMRs were negative for signs of heart disease. R. at 9. Furthermore, VA medical examinations in 1978 had shown that the veteran's asthma was "greatly improved and in remission" and had indicated that no heart disease had been found. *Ibid.* The BVA cited medical texts to the effect that myocardial infarction and congestive heart failure are not "recognized complications" of bronchial asthma, and that the veteran apparently did not have "cardiac asthma" because that syndrome is a result of, not a cause of, heart disease. R. at 9–10. A timely appeal to this Court followed.

## II. Analysis

When a veteran dies from a service-connected disability, the veteran's surviving spouse is eligible for DIC. *See* 38 U.S.C. § 1310; 38 C.F.R. § 3.5(a) (1994). A veteran's death is due to a service-connected disability when "such disability was either the principal or a contributing cause of death." *See* 38 C.F.R. § 3.312 (1994). A claim for DIC is treated as a new claim, regardless of the status of adjudications concerning service-connected-disability claims brought by the veteran before his death (*see* 38 C.F.R. § 20.1106 (1994); *Zevalkink v. Brown,* 6 Vet.App. 483, 491 (1994)); therefore, the claim must be well grounded.

Section 5107(a) of title 38, U.S.Code, provides in pertinent part: "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." Where the determinative issue involves either medical etiology or a medical diagnosis, competent medical evidence of a nexus between a current condition and an in-service disease or injury is required to fulfill the well-grounded-claim requirement of section 5107(a), and a lay person is not competent to provide such medical evidence. *See Caluza v. Brown,* 7 Vet.App. 498, 506 (1995); *Heuer v. Brown,* 7 Vet.App. 379, 384 (1995) (citing *Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993)). A service-connection claim must be accompanied by medical evidence which establishes that the claimant currently has the claimed disability. *See Brammer v. Derwinski,* 3 Vet.App. 223, 225 (1992) (absent "proof of a present disability[,] there can be no valid claim"); *see also Rabideau v. Derwinski,* 2 Vet.App. 141, 144 (1992).

At the time of his death, the veteran had a 30% disability rating for service-connected asthma. R. at 270–71, 277–90, 294. The veteran's death certificate indicated that the cause of death was heart disease. R. at 294. The BVA determined that the appellant's DIC claim was not well grounded because there was no evidence that asthma had caused or contributed to his death or that his heart condition was incurred in service. R. at 10. The appellant's contentions are (1) that her husband suffered a heart attack in service and/or (2) that his service-connected asthma contributed to his death from heart disease.

The truthfulness of evidence is generally presumed in determining whether a claim is well grounded, *see Robinette,* 8 Vet.App. at 75–76; *King v. Brown,* 5 Vet.App. 19, 21 (1993), and a Board determination whether a claim is well grounded is a conclusion of law subject to de novo review by the Court under 38 U.S.C. § 7261(a)(1), *see Grivois v. Brown,* 6 Vet.App. 136, 139 (1994); *Grottveit, supra.* Presuming the truthfulness of the evidence for the purpose of determining whether the DIC claim is well grounded, and reviewing that issue de novo, the Court finds that the veteran had a heart condition at the time of his death and for one year before his death (R. at 294). However, the record does not contain any *medical* evidence that the veteran incurred or aggravated a heart disorder during service or that his service-connected asthma contributed to his death from heart disease. Thus, while the *Brammer/Rabideau* requirement for medical evidence of the existence of the claimed condition (heart disease) was met, the *Heuer/Grottveit* require-

ment for medical evidence of a nexus to service (of heart disease directly or secondary to asthma) was not met.

The record contains a November 1944 VA examination report that indicates "a *history* of [c]ardiac embarrassment during moderately severe [asthma] attacks", but the physician noted "no pathological signs" as to "cardiovascular system". R. at 83 (emphasis added). A December 1948 VA examination report also indicated "normal" as to "cardiovascular system". R. at 137. A February 1978 VA examination report stated under "diagnosis" that "no heart disease was found". R. at 198. A May 1978 VA examination report indicated a normal sinus rhythm and no cardiomegaly. R. at 213. A November 1978 VA examination report stated that no heart disease was found. R. at 268. There is no medical evidence in the record to indicate heart disease earlier than 1989—the 1990 death certificate indicated that the veteran had had a myocardial infarction one year previously. R. at 294. Nor is there any medical evidence in the record that the veteran's asthma caused or contributed to his heart disorder; indeed, VA medical examination reports in 1978 indicated that the veteran's asthma was "in remission" (R. at 197–98, 219, 268). The RO found in March 1978 that there was no evidence of bronchial asthma at that time, but that the veteran's "asthma condition is protected by the operation of law". R at 202–03; *see* 38 U.S.C. § 1159.

The appellant testified as to her beliefs that the veteran might have had a heart attack in service and that his asthma contributed to his heart disorder. R. at 341–47. However, a lay person is not competent to provide evidence as to medical etiology. *See Heuer* and *Grottveit,* both *supra.* The appellant also testified that Dr. "Karen" had stated an opinion that the veteran's "attack in 1981" was "not his first" and that "scar tissue show[ed] that he had [had] a heart attack prior to this time, possibly 10, 20, 30 years maybe more". R. at 344. The Court has held that "the connection between what a physician said and the layman's account of what he purportedly said, filtered as it was through a layman's sensibilities, is simply too attenuated and inherently unreliable to constitute 'medical' evidence". *Robinette,* 8 Vet. App. at 77. Because the appellant did not present medical evidence of a nexus between the veteran's heart disease and his service, or medical evidence that the veteran's serviceconnected asthma caused or contributed to his heart disorder, the Court holds that the Board correctly found that the appellant's DIC claim was not well grounded.

■ In *Robinette,* 8 Vet.App. at 80, the Court held that where a claimant has not submitted a well-grounded claim and "the Secretary was on notice that relevant evidence may have existed, or could have been obtained, that, if true, would have made the claim 'plausible' and that such evidence had not been submitted with the application" the Secretary had an obligation under 38 U.S.C. § 5103(a) to notify the claimant of the evidence necessary to complete his application. Assuming, but not deciding, that the *Robinette* section 5103(a) duty would apply in a case where the BVA had correctly found the claim to be not well grounded, the Court holds on the facts of this case that the Secretary was not obligated to advise the claimant to obtain a medical statement from Dr. "Karen", because even if the appellant had presented a statement from a physician to the effect that the veteran had had a heart attack "10, 20, 30 years maybe more" before 1981, such a statement would not provide a nexus with the veteran's service from December 1942 to November 1943. Thirty years before 1981 would still be many years after the veteran's separation from service, and an equivocal statement such as "maybe more" would not provide a nexus to service and would thus not justify a belief that the claim is plausible. *See Lathan v. Brown,* 7 Vet. App. 359, 365 (1995) (quoting section 5107(a)) (to be well grounded a claim must be accompanied by supportive evidence and such evidence "must 'justify a belief by a fair and impartial individual' that the claim is plausible").

The Court has held that a VA hearing officer has a regulatory obligation under 38 C.F.R. § 3.103(c)(2) to inform a claimant of evidence he or she "may have overlooked and which would be of advantage to the claim-

ant's position." *See Douglas v. Derwinski*, 2 Vet.App. 435, 441–42 (1992) (en banc), *aff'g on these grounds Douglas v. Derwinski*, 2 Vet.App. 103, 110 (1992). However, the hearing officer at the May 1991 RO hearing had no obligation to advise the appellant as to the "Dr. Karen" statement, because, as the Court concluded above, that statement would not have helped prove the claim.

In *Thurber v. Brown*, the Court held:

> [B]efore the BVA relies, in rendering a decision on a claim, on any evidence developed or obtained by it subsequent to the issuance of the most recent [Statement of the Case (SOC) ] or [Supplemental (SOC) ] with respect to such claim, the BVA must provide a claimant with reasonable notice of such evidence and of the reliance proposed to be placed on it and a reasonable opportunity for the claimant to respond to it.

*Thurber*, 5 Vet.App. 119, 126 (1993). The BVA, in the June 1993 decision here on appeal, cited several medical texts, but the record does not indicate that the appellant was given a *Thurber* notification. R. at 9–10. In *Jones (Wayne) v. Brown*, the Court held that where a claimant had not presented a well-grounded claim, the BVA's failure "to provide him with notice of and an opportunity to respond to the Board's use of a treatise" was nonprejudicial error. *Jones*, 7 Vet. App. 134, 137 (1994); see also *Yabut v. Brown*, 6 Vet.App. 79, 83 (1993). Because the appellant in the instant case failed to submit a well-grounded claim under 38 U.S.C. § 5107(a), VA was not required to carry her claim to full adjudication, and thus any error in the subsequent administrative proceedings as to that claim—the Board's citation to medical treatises apparently without giving the appellant notice and an opportunity to respond—was not prejudicial to the appellant. *See Jones* and *Yabut*, both *supra*.

Finally, as to the appellant's contention that the Secretary was obligated under his 38 U.S.C. § 5107(a) duty to assist to seek to obtain medical records of treatment by "Dr. Karen", the duty to assist was not triggered because the DIC claim was not well grounded.

## III. Conclusion

Accordingly, in view of the foregoing analysis, the Court holds that the appellant has not demonstrated that the BVA committed error—in its findings of fact, conclusions of law, or procedural processes—that would warrant remand or reversal under 38 U.S.C. §§ 5107(a), 7104(a), (d)(1). Therefore, the Court affirms the June 15, 1992, Board decision.

AFFIRMED.