**Wendy R. DARBY, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 96–1114.**

United States Court of Veterans Appeals.

May 9, 1997.

Wendy R. Darby, pro se.

Mary Lou Keener, General Counsel, Ron Garvin, Assistant General Counsel, Adrienne Koerber, Deputy Assistant General Counsel and Amy S. Gordon, Washington, DC, were on the brief, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and FARLEY, Judges.

KRAMER, Judge:

The appellant, Wendy R. Darby, widow of Vietnam veteran Bruce E. Darby, appeals a May 20, 1996, decision of the Board of Veterans' Appeals (BVA or Board) denying service connection for the cause of the veteran's death. Record (R.) at 5–12. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the decision of the BVA.

## I. RELEVANT BACKGROUND

The veteran served in the U.S. Army from July 1964 to June 1967. R. at 30. The veteran's DD 214 (Armed Forces of the United States Report of Transfer or Discharge) indicates that he received several awards, including the Vietnam Campaign Medal and the Vietnam Service Medal. *Ibid.* In May 1986, he was diagnosed with and began receiving chemotherapy for "gastric adenocarcinoma with regional and mediastinal spread." *See* R. at 53. (Gastric is "pertaining to, affecting, or originating in the stomach." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 679 (27th ed.1988) [hereinafter DORLAND'S]. Adenocarcinoma is "carcinoma derived from glandular tissue or in which the tumor cells form recognizable glandular structures." DORLAND'S at 27. Mediastinal is of or pertaining to "the mass of tissues and organs separating the two pleural sacs, between the sternum in front and the vertebral column behind, and from the thoracic inlet above to the diaphragm below." DORLAND'S at 991.) In November 1986, the veteran was hospitalized for more than a month and diagnosed with (1) "malignant paracardial [sic] effusion with tamponade, congestive splenomegaly and heart failure [and (2)] gastric carcinoma, local adenopathy mesenteric invasion and ascites." R. at 51–52; *see* R. at 50; 53–55. A discharge summary, dated December 19, 1986, indicated that "chest films" showed "a considerable increase in cardiac size, globular in shape with bilateral pleural effusion; all consistent with paracardial [sic] effusion." R. at 51; *see* R. at 53. (Pleural is pertaining to the "serous membrane investing the lungs and linking the thoracic cavity." DORLAND'S at 1309.) In late December 1986, the appellant was again hospitalized and treated with further chemotherapy because he had "evidence of gastric primary progressing with associated malignant pericardial effusion." R. at 46–47; *see* R. at 42–45, 48–49. He was discharged on January 21, 1987, with a diagnosis including "widely disseminated metastatic gastric carcinoma involving the mediastinum, liver, with malignant ascites." R. at 47. (Metastatic is pertaining to the transfer of disease from one organ or part to another not directly connected with it. DORLAND'S at 1016.)

On January 22, 1987, the veteran returned to the hospital for additional treatment. R. at 69. He died on February 13, 1987. R. at 40, 69. According to the death certificate, which was signed by David Werdegar, M.D., M.P.H., the immediate cause of death was pneumonia "due to or as a consequence of" carcinomatosis of the heart, lungs, liver, and abdomen "due to or as a consequence of primary adenocarcinoma [of the] stomach." R. at 40. (Carcinomatosis is "the condition of widespread dissemination of cancer throughout the body." DORLAND'S at 272.) The death certificate indicated that the approximate interval between onset of the veteran's pneumonia and death was three days, the veteran's carcinomatosis, including that of the lungs, and death was six months, and the veteran's primary adenocarcinoma of the stomach and death was twelve months. R. at 40. At the time of his death, the veteran was

not service connected for any disability. R. at 87.

In May 1989, the appellant filed an application for dependency and indemnity compensation (DIC) asserting that her husband's death was related to his "exposure to Agent Orange while serving in Vietnam." R. at 35. In April 1994, a regional office (RO) denied her claim "because the veteran did not die from a service-related condition as a result of Agent Orange exposure." R. at 72. The appellant appealed this decision to the BVA. R. at 78–79; 92.

In May 1994, the appellant submitted a letter, dated October 1990, to the RO indicating that she had been awarded survivor's benefits through the Agent Orange Veteran Payment Program. R. at 102–03. The letter, signed by a "Special Master for Appeals," stated that "[f]rom the record it appears that the veteran suffered severe disability over a substantial period, and it may be presumed that he would have been entitled to a disability award prior to his death." R. at 103.

The BVA denied the appellant's claim in May 1996 (R. at 5–12), and the appellant appealed to this Court. In its May 20, 1996, decision, the BVA stated:

> The Board concludes that there is sufficient affirmative evidence indicating intercurrent disease in the veteran's death certificate so as to show that the veteran's lung cancer was not related to Agent Orange or other herbicide exposure in Vietnam. The interval between the onset of lung cancer and death, as stated on the death certificate, was only 6 months, well after the veteran's discharge from the service. Additionally, the medical evidence shows that the veteran had metastatic, not primary, lung cancer. The primary site of the cancer was the stomach, thereby rebutting the presumption that the lung cancer was caused by dioxin exposure. Although the appellant asserts that her husband had health problems related to exposure to Agent Orange and other chemical agents in Vietnam years before

his death, there is no medical evidence in the file to support this assertion.

R. at 10.

## II.  ANALYSIS

■ The Court reviews the Board's findings of fact under a "clearly erroneous" standard of review. 38 U.S.C. § 7261(a)(4); *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990); *see also Proscelle v. Derwinski,* 2 Vet.App. 629, 631–32 (1992). Under the "clearly erroneous" standard of review, "if there is a 'plausible' basis in the record for the factual determinations of the BVA, even if this Court might not have reached the same factual determinations, [the Court] cannot overturn them." *Gilbert,* 1 Vet.App. at 53.

■ Pursuant to 38 U.S.C. § 1310, DIC is paid to a surviving spouse of a qualifying veteran who died from a service-connected disability. *See Hanna v. Brown,* 6 Vet.App. 507, 510 (1994). A veteran's death will be considered service connected where a service-connected disability was either the principal or a contributory cause of death. 38 C.F.R. § 3.312(a) (1996). A service-connected disability is the principal cause of death when that disability, "singly or jointly with some other condition, was the immediate or underlying cause of death or was etiologically related thereto." 38 C.F.R. § 3.312(b) (1996). To be a contributory cause of death, the disability must have "contributed substantially or materially" to death, "combined to cause death," or "aided or lent assistance to the production of death." 38 C.F.R. § 3.312(c) (1996). A claim for DIC is a new claim; therefore, like any other claim for service-connected benefits, a DIC claim must be well grounded. *See Johnson v. Brown,* 8 Vet.App. 423, 426 (1995); 38 U.S.C. § 5107(a) ("[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded.").

■ Generally, a well-grounded claim requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of incurrence or aggravation of a disease or injury in service;

and (3) medical evidence of a nexus between an in-service injury or disease and the current disability. *See Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), *aff'd per curiam,* 78 F.3d 604 (Fed.Cir.1996) (table).

As relevant here, 38 C.F.R. § 3.307(a)(6)(iii) (1996) provides:

[A] veteran who ... served in the Republic of Vietnam during the Vietnam era and has a disease listed at § 3.309(e) shall be presumed to have been exposed during such service to an herbicide agent, unless there is affirmative evidence to establish that the veteran was not exposed to any such agent during that service.

*See* 38 U.S.C. §§ 101(29), 1116. Pursuant to 38 C.F.R. § 3.309(e) (1996), implementing 38 U.S.C. § 1116, if a veteran is exposed to an herbicide agent during service and develops one of the diseases listed, one of which includes lung cancer, the veteran "shall be service-connected if the requirements of § 3.307(a)(6) are met even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of § 3.307(d) are also satisfied." Therefore, where 38 U.S.C. § 1116 and 38 C.F.R. §§ 3.307(d) and 3.309(e) are satisfied, the requirements for evidence of both service incurrence and causal nexus are satisfied. *See Caluza, supra; see also Brock v. Brown,* 10 Vet.App. 155, 162 (1997).

Section 3.307(d) provides:

Evidence which may be considered in rebuttal of service incurrence of a disease listed in § 3.309 will be any evidence of a nature usually accepted as competent to indicate the time of existence or inception of disease, and *medical judgment will be exercised in making determinations relative to the effect of intercurrent injury or disease.* The expression "affirmative evidence to the contrary" will not be taken to require a conclusive showing, but such showing as would, in sound medical reasoning and in the consideration of all evidence of record, support a conclusion that the disease was not incurred in service.

38 C.F.R. § 3.307(d) (1996) (emphasis added). In addition, 38 U.S.C. § 1113(a) provides:

Where there is affirmative evidence to the contrary, or evidence to establish that an intercurrent injury or disease which is a recognized cause of any of the diseases or disabilities within the purview of section ... 1116 ... has been suffered between the date of separation from service and the onset of any such diseases or disabilities ... service-connection pursuant to section ... 1116 of this title ... will not be in order.

38 U.S.C. § 1113(a).

▮▮▮ In this case, the veteran served in Vietnam and died, in part, from lung cancer, one of the diseases listed in 38 C.F.R. § 3.309(e). Thus, unless there is competent evidence that demonstrates intercurrent disease so as to rebut the presumption of service connection, the appellant is entitled to service connection for the cause of the veteran's death. The Board found that both the veteran's medical records and death certificate constitute competent, rebutting evidence. The Court must affirm this finding of fact unless it is found to be "clearly erroneous." *See Gilbert, supra.* First, the veteran's medical records indicate that his first diagnosis of cancer was for stomach cancer (R. at 53) and that additional cancers developed as a result of metastasizing (R. at 42–55; 69). Second, the veteran's death certificate, signed by a doctor, indicates that the veteran's lung cancer was due to or a consequence of the veteran's stomach cancer. R. at 40. Based on this evidence, the veteran was not entitled to the presumption of service connection established by § 3.309(e), and the BVA's decision denying the appellant service connection for the cause of the veteran's death is not clearly erroneous. Because the veteran is not entitled to the presumption of 38 U.S.C. § 1116, and 38 C.F.R. §§ 3.307 and 3.309, in order for the appellant to have a well-grounded claim for DIC, there must be competent medical evidence in the record showing an etiological relationship between the veteran's cause of death and his period of military service. *See Caluza,* 7 Vet.App. at 506; *Grottveit v. Brown,* 5 Vet.App.91, 93 (1993); *see also Combee v. Brown,* 34 F.3d 1039, 1043 (Fed.Cir.1994); *Ramey v. Brown,* 9 Vet.App. 40, 44 (1996). As to the letter submitted by the appellant indicating that she had been awarded survivor's benefits under the Agent Orange Veteran Payment

Program, such an award does not automatically entitle her to DIC. *See Brock,* 10 Vet. App. at 160–62. Eligibility for DIC is based on meeting the requirements set forth in chapter 13 of title 38, United States Code. Because there is no medical evidence linking the veteran's cause of death to service, the appellant does not have a well-grounded claim for DIC based on direct service connection. *See Caluza* and *Grottveit,* both *supra.*

### III. CONCLUSION

Upon consideration of the above, the Court holds that the appellant has not demonstrated that the BVA committed either factual or legal error that requires reversal or remand. *See* 38 U.S.C. § 5107, 7104(d), 7261; *Gilbert,* 1 Vet.App. at 52–53. The May 20, 1996, BVA decision is AFFIRMED.