James A. HICKS, Appellant,

v.

Togo D. WEST, Jr., Secretary of
Veterans Affairs, Appellee.

No. 93–1222.

United States Court of Veterans Appeals.

Dec. 9, 1998.

Michael P. Horan, and Linda E. Blauhut, Washington, DC, were on the brief, for appellant.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; Michael A. Leonard, Deputy Assistant General Counsel; and Leonard J. Selfon, Washington DC, were on the brief, for appellee.

Before HOLDAWAY, STEINBERG, and GREENE, Judges.

HOLDAWAY, Judge:

The appellant, James A. Hicks, appeals a September 1993 decision of the Board of Veterans' Appeals (Board or BVA) that denied the appellant's claims for service connection of a heart disorder and of residuals of heat exhaustion and denied his request to reopen his claim for service connection of a nervous condition. Both parties have filed briefs. The appellant alleges in his state-ment of the issues (1) that the Board erred by failing to remand the heart condition claim to a VA regional office (VARO) to obtain additional medical records, and (2) that the Secretary's failure to apply the statutory presumption of soundness or of aggravation constituted new and material evidence to reopen his nervous condition claim. In the argument portion of the appellant's brief, he raises two additional issues. The appellant has not pursued on appeal his claim for residuals of in-service heat exhaustion except insofar as it relates to his alleged heart condition. Therefore, the Court considers the appellant to have abandoned on appeal a separate claim on that issue. *See Bucklinger v. Brown,* 5 Vet.App. 435 (1993). The Court has jurisdiction of the case under 38 U.S.C. § 7252(a). For the following reasons, the Court will affirm the decision of the Board.

## I. FACTS

The appellant served on active duty in the U.S. Army from July to November 1944. His induction examination found his cardiovascular and psychiatric conditions to be normal. A September 1944 medical note indicated that he had suffered from "[h]eat, ill-defined effects, manifested by exhaustion and dizziness, following physical fitness test." The Army medical examiner's impression was that the appellant had suffered heat exhaustion.

An undated neuropsychiatric consultation report recorded that the appellant had poor physical performance, repeatedly fell out of marches, passed out frequently, and was continually complaining about his chest. The consultation report also noted that he was unstable emotionally and was "always crying." An October 1944 psychiatric evaluation noted that the appellant complained that upon exertion he suffered nervousness, saw spots before his eyes, had sharp chest pain, and had trouble breathing. He indicated that his chest troubles had begun two years earlier while playing football. The appellant was diagnosed with "[p]sychoneurosis, [m]ixed ([h]ysteria—[h]ypochondriasis) [m]ild," and it was recommended that he be discharged from the Army. His discharge record noted that he had nervousness and

chest pains with trouble breathing; both conditions were listed as existing prior to service and being aggravated by military service. The appellant's discharge examination reported a diagnosis of inadequate personality that had existed prior to service. *Id.* His cardiovascular system was reported to be normal.

In December 1949, a VARO denied the appellant's claim for a nervous condition. The VARO found that the nervous condition preexisted service and was not aggravated in service. The VARO also noted that the appellant had been diagnosed with an inadequate personality at discharge, but that it was a constitutional or developmental defect that was not a disability for VA compensation purposes. The appellant did not appeal the VARO's rating decision.

In August 1991, the appellant filed a claim for service connection for a chronic heart condition as a "residual" of his in-service heat exhaustion, dizziness, chest pains, and seeing spots before his eyes. In a VA Form 21–4138, Statement in Support of Claim, the appellant stated:

> In 1946 I was treated for [chest pains, dizziness, spots before my eyes, and shortness of breath] by Dr. Lindsey, of Jacksboro, [Tennessee]. He detected an irregular heart beat[,][g]ave me medication for chest pains [and] told me to avoid strennious [sic] physical exertion. Between 1946[and] 1961 I was treated by several doctors for chronic chest pains [and] shortness of breath. All of them gave me tranquilizers. From 1961 I was treated for these symptoms by Dr. Anton Jung, Dr. Staton, Dr. Morgan George ..., Dr. Phyllis Wells [and] Dr. Albrecht ... who is my present physician.

The appellant also submitted medical records release forms for Doctors Wells, Albrecht, and George. The VARO denied the appellant's claim for service connection of a heart condition. The VARO construed the appellant's application for benefits to be a claim to reopen and explained that in service the appellant's chest pain and other symptoms were thought to be related to his personality disorder because there was no organic basis discovered for the symptoms. The VARO noted that there was no evidence of a heart condition in service and that the appellant's first reported treatment for a heart condition was more than one year after service. In March 1992, the appellant filed a Notice of Disagreement.

In April 1992, the VARO denied the appellant service connection for a chronic organic disease related to his in-service heat exhaustion and manifested by dizziness, chest pains, shortness of breath, and spots before his eyes. The appellant filed a substantive appeal to the Board in August 1992. In September 1992, the VARO issued a Supplemental Statement of the Case, which explained that the appellant's application to reopen his nervous disorder claim and his claims for service connection of a heart disorder and of residuals of heat exhaustion were all denied.

At a hearing before the VARO in March 1993, the appellant described the day he was treated for heat exhaustion. He stated that initially he thought that the heat exhaustion had had ill effects on his heart and nervous system, but that after he "read a few books at the library," he felt that he had had a heart attack in service. The appellant stated that every time he tried to participate in a speed march during service he would suffer the same symptoms and was forced to drop out. *Id.* The appellant was of the opinion that he had been misdiagnosed in service. He reiterated that a doctor had diagnosed him with an irregular heartbeat in 1946 and had given him medication for his heart condition. In response to the hearing officer's question about whether the doctor had opined whether the heart problem was caused by service, the appellant responded, "Yes, ... I told him that I had this heat exhaustion[,] and he thought that might have had some residual effect on my [heart]." The appellant explained that he had had ongoing problems with his heart since that time and was currently on medication for the condition. He also testified that he was treated for his nervous disorder until 1960. He claimed to have been diagnosed with arrhythmia and stated that he believed his nervousness problems were caused by his heart condition. However, in response to a question from the hearing officer, he admit-

ted that he did not have a current diagnosis of a psychiatric disorder. At the hearing, the appellant submitted an October 1949 form from the Office of the Adjutant General, Department of the Army, which listed "[n]ervous condition" as a defect noted at separation from active service. The hearing officer subsequently denied the appellant's claim for service connection of a heart disorder. The letter notifying the appellant of the hearing officer's decision also stated, "You may submit evidence at any time showing the disability existed and was incurred in or aggravated by service or was treated within one year after service."

On appeal to the BVA, the Board determined that the appellant had not submitted new and material evidence to reopen his claim for service connection of a nervous disorder. The BVA concluded that the appellant's claim for service connection of a heart condition was well grounded but that a preponderance of the evidence was against service connection.

## II. ANALYSIS

### A. Heart Condition

#### 1. Well–Grounded Claims

▪ The appellant's claim for service connection of a heart condition is not well grounded. The burden is on the appellant to submit evidence sufficient to establish a well-grounded claim. 38 U.S.C. § 5107(a). For a claim to be well grounded, generally a claimant must submit each of the following: (1) medical evidence of a current disability; (2) medical evidence, or in certain circumstances lay evidence, of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the in-service injury or disease and the current disability. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed.Cir.1996) (table). Under 38 C.F.R. § 3.303(b) (1997), if a condition was noted in service or during an applicable presumption period, a claimant may satisfy the well-grounded-claim requirement by submitting evidence of postservice continuity of symptomatology and medical or, in appropriate circumstances, lay evidence of a nexus between

the post-service symptomatology and the current disability. *See Savage v. Gober*, 10 Vet.App. 488, 497 (1997). A BVA decision on whether a claim is well grounded is a matter that this Court reviews de novo. *See Caluza*, 7 Vet.App. at 505. The truthfulness of the evidence is presumed when determining whether a claim is well grounded. *See Robinette v. Brown*, 8 Vet.App. 69, 75–76 (1995); *King v. Brown*, 5 Vet.App. 19, 21 (1993).

▪ The appellant has not submitted medical evidence of a current heart condition, or any other current disability for that matter; therefore, his claim is not well grounded. *See Caluza*, 7 Vet.App. at 506; *Brammer v. Derwinski*, 3 Vet.App. 223, 224 (1992); *Rabideau v. Derwinski*, 2 Vet.App. 141, 143 (1992). His lay statements that he currently suffers from a heart condition are not competent to establish that medical fact for the purposes of well grounding a claim. *See Grottveit v. Brown*, 5 Vet.App. 91, 93 (1993) ("[W]here the determinative issue involves medical causation or medical diagnosis, competent medical evidence to the effect that the claim is 'plausible' or 'possible' is required."). The appellant's service medical records did note that he suffered chest pains in service. However, his lay testimony that he had had ongoing heart problems since his treatment in 1946 would be insufficient to well ground his claim under section 3.303(b) because he still lacks medical evidence of a current heart condition and of a link between the postservice symptomatology and the alleged current heart condition. *See Savage, Caluza,* and *Grottveit,* all *supra.* The Board's denial of the appellant's heart claim on the merits, when in fact the claim was not well grounded, was nonprejudicial error. *See* 38 U.S.C. § 7261(b) ("[T]he Court shall take due account of the rule of prejudicial error."); *Edenfield v. Brown*, 8 Vet.App. 384, 390 (1995) (en banc).

#### 2. Duty to Inform

▪ Although the appellant's claim for service connection of his alleged heart condition is not well grounded, the Secretary is still obligated to inform him of any evidence of which the Secretary is on notice that is necessary to complete the appellant's applica-

tion for benefits. *See* 38 U.S.C. § 5103(a); *Robinette*, 8 Vet.App. at 77–80. In addition, "[i]t is the responsibility of the VA employee or employees conducting [a] hearing[ ] to explain fully the issues and suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position." 38 C.F.R. § 3.103(c)(2) (1997); *see Douglas v. Derwinski*, 2 Vet.App. 435, 440–42 (1992) (en banc), *aff'g on reh'g* 2 Vet.App. 103, 110 (1992). "[T]he extent of the 'Secretary's section 5103(a) obligation depends on the particular facts of the case and on the extent to which the Secretary has advised the claimant of the evidence necessary to be submitted with a VA-benefits claim.' " *Graves v. Brown*, 8 Vet.App. 522, 525 (1996) (quoting *Robinette*, 8 Vet.App. at 78). In *Robinette*, the Court held that the appellant's "statement is the functional equivalent of the veteran's having quoted his physician's oral or written communication and necessarily implies that the physician made such a statement." *Robinette*, 8 Vet.App. at 75. The appellant's hearsay statement regarding his doctor's opinion is generally presumed credible when determining if the evidence could be relevant and necessary to a well-grounded claim. *See id.* However, "there [is] no section 5103(a) duty in a case where, even if a physician's statement had been obtained and stated what the appellant said it would state, it would not provide the requisite . . . evidence to well ground the claim." *Meyer v. Brown*, 9 Vet. App. 425, 430 (1996) (citing *Johnson v. Brown*, 8 Vet.App. 423, 427 (1995)); *see also Slater v. Brown*, 9 Vet.App. 240, 244 (1996); *Butler v. Brown*, 9 Vet.App. 167, 171 (1996). The Secretary is obligated to inform the veteran only "if the resulting evidence would likely have rendered the claim plausible." *Brewer v. West*, 11 Vet.App. 228, 236 (1998).

██ In this matter, the appellant submitted a Statement in Support of Claim explaining that Dr. Lindsey had found in 1946 that he had an irregular heartbeat, and the appellant listed all the doctors who had treated him since service, including his present physician, Dr. Albrecht. Along with that statement, the appellant submitted several medical records release forms for the named physicians. Interestingly, Dr. Lind-

sey's name was not among them. At the VA hearing, the appellant testified that Dr. Lindsey had thought that the in-service heat exhaustion "might" have had "some residual effect" on his heart. He also stated that he was currently being treated for his heart condition by Dr. Albrecht.

The Court's word parsing in some of its medical nexus cases has created a unclear picture for ascertaining what degree of certainty is necessary in a medical opinion in order to establish a plausible medical nexus. *Compare Obert v. Brown*, 5 Vet.App. 30, 33 (1993) (suggesting that a doctor's opinion, expressed in terms of *may*, was too speculative, on its own, to establish a well-grounded claim), *and Tirpak v. Derwinski*, 2 Vet.App. 609, 610–11 (1992) (holding that a doctor's opinion that the veteran's service-connected condition "may or may not" have contributed to his cause of death was inadequate nexus evidence to well grounded the claim), *with Alemany v. Brown*, 9 Vet.App. 518, 519 (1996) (holding that a medical opinion that said, "It is possible that the stress of war may have unleashed a process that was dormant and latent[,] and it is possible that he would have never in his life developed convulsions," if not for the stress of the war, was sufficient nexus evidence to well ground a claim), *Molloy v. Brown*, 9 Vet.App. 513, 516 (1996) (stating that a medical opinion, expressed in terms of *could*, was sufficient to satisfy the nexus requirement of a well-grounded claim), *Watai v. Brown*, 9 Vet.App. 441, 443 (1996) (holding that two medical opinions, one stating that there "probably" was a relationship to service and the other stating "there very well might have been," was sufficient medical nexus evidence for a well-grounded claim), *and Lathan v. Brown*, 7 Vet.App. 359, 366 (1995) (holding that medical evidence expressed in terms of *possible* was sufficient for a well-grounded claim and stating that a medical opinion need not be expressed in terms of certainty to satisfy the requirements of a well-grounded claim); *see also Hernandez–Toyens v. West*, 11 Vet.App. 379, 382 (1998) (holding that evidence of a "possible or plausible" connection between veteran's "current condition and . . . in-service incurrence" was sufficient to well ground

the claim and summarizing the case law on the degree of certainty required in medical opinions). The putative statement of Dr. Lindsey in this case seems to fall in the middle of these various analyses. Nevertheless, we need not decide the issue because even if the putative statement of Dr. Lindsey were sufficient for a well-grounded claim on the matter of medical nexus, there is no possibility of the appellant's heart claim being made well grounded by any such statement. This is because, as we held in part II.A.1., above, the heart claim was not well grounded due to the lack of medical evidence of a current heart condition. *See Brewer* and *Johnson*, both supra. Therefore, the Court holds that the Secretary did not, as a matter of law, fail to comply with the statutory mandate in section 5103.

### B. Nervous Disorder

[10] The appellant contends that the Secretary's failure to apply the statutory presumptions of soundness and aggravation constituted new and material evidence sufficient to reopen his claim for service connection of a nervous disorder. Recently, the United States Court of Appeals for the Federal Circuit held that a presumption, specifically the presumption of aggravation, cannot be treated as a form of "new and material evidence" for the purposes of reopening a finally disallowed claim. *See Routen v. West*, 142 F.3d 1434, 1439–41 (Fed.Cir.1998) (overruling this Court's holdings in *Akins v. Derwinski*, 1 Vet.App. 228 (1991), and *Corpuz v. Brown*, 4 Vet.App. 110 (1993), that failure to apply an evidentiary regulation could constitute new and material evidence); *see also* 38 U.S.C. § 1153 (statutory presumption of aggravation); 38 C.F.R. § 3.306(a) (1997) (implementing regulation). The appellant's argument fails as a matter of law. The appellant has not asserted that he submitted additional evidence that would constitute new and material evidence. Also, because the Board found that the actual evidence submitted by the appellant was not new evidence, the decision by the Federal Circuit in *Hodge v. West*, 155 F.3d 1356 (Fed.Cir.1998), is not implicated in this matter. The decision in *Hodge, supra*, overruled this Court's analysis with respect to the materiality component of "new and material" evidence. In order to reopen a claim, the evidence submitted must still be more than "cumulative" or "redundant." 38 C.F.R. § 3.156(a) (1997); *see also Evans v. Brown*, 9 Vet.App. 273, 283 (1996).

### C. Miscellaneous

The Court notes that the appellant has raised several issues in the argument portion of his brief that were unrelated to the two specific issues set forth in the statement of the issues section of his brief. This is contrary to Rule 28(a)(5) of the Court's Rules of Practice and Procedure, which contemplates that the argument will be germane to the issues as set forth in the statement of the issues. To attempt to introduce "new" issues via the argument is potentially confusing to the Court and the other party. No corrective action is required, but it is hoped that by bringing this to counsel's attention, there will be better compliance with the rules in the future.

First, the appellant alleges that his psychoneurotic disorders "have never been considered for rating [purposes]." Appellant's Brief at 6–7. Assuming that the claim for service connection of a nervous disorder denied by the VARO in 1949 did not encompass consideration of the appellant's in-service diagnoses for psychoneurotic problems, because the appellant had not submitted evidence that he currently suffers from a psychoneurotic disorder, he lacks sufficient evidence for a well-grounded claim on that issue. *See Caluza, Rabideau,* and *Brammer,* all *supra.* Therefore, any error committed by not adjudicating a separate claim relating to the psychoneurotic disorders diagnosed in service would have been nonprejudicial to the appellant. *See* 38 U.S.C. § 7261(b) ("[T]he Court shall take due account of the rule of prejudicial error."); *Edenfield,* 8 Vet.App. at 390–91. In this connection, the Court notes that the diagnosis relied on by the appellant was based on an initial interview on October 5, 1944. The final diagnosis dated November 25, 1944, found only an inadequate personality, which had existed prior to service.

Second, the appellant contends that the possibility that his nervous condition and

heart condition were interrelated was reasonably raised to the Board and it failed to address the issue. Appellant's Brief at 9. However, once again, the appellant has not presented evidence that he had a current diagnosis of either a nervous disorder or a heart condition so as to establish a well-grounded claim for the heart condition or to reopen the nervous disorder. *See Caluza, Rabideau,* and *Brammer,* all *supra.* Furthermore, the only indication in the record that the alleged heart condition and nervous disorder may be etiologically related, is the veteran's own lay statement, which is not competent to establish medical causation. *See Grottveit, supra; Espiritu v. Derwinski,* 2 Vet.App. 492, 494 (1992).

### III. CONCLUSION

After consideration of the pleadings and a review of the record, the Court holds that the appellant has not demonstrated that the BVA committed either legal or factual error which would warrant reversal or remand. The Court is also satisfied that the BVA decision fulfills the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1). *See Gilbert v. Derwinski,* 1 Vet.App. 49, 56–57 (1990). The September 1993 decision of the Board is AFFIRMED.