**Estelle L. COSTANTINO, Appellant,**

v.

**Togo D. WEST, Jr., Secretary of Veterans Affairs, Appellee.**

**No. 96–1037.**

United States Court of Appeals for Veterans Claims.

Aug. 16, 1999.

Michael P. Horan was on the pleadings for the appellant.

John H. Thompson, Acting General Counsel; Ron Garvin, Assistant General Counsel; Carolyn F. Washington, Deputy Assistant General Counsel; and Gregory W. Fortsch were on the brief for the appellee.

Before NEBEKER, Chief Judge, and KRAMER and STEINBERG, Judges.

KRAMER, Judge:

The appellant, Estelle L. Costantino, appeals a May 29, 1996, decision of the Board of Veterans' Appeals (BVA or Board) that determined that the appellant's claim for service connection for the cause of the veteran's death was not well grounded (claim 1) and denied the appellant's claim for dependency and indemnity compensation (DIC) under 38 U.S.C. § 1318 (claim 2). Record (R.) at 9, 19. The appellant and the Secretary have filed briefs, and the appellant has filed a reply brief. The appellant has requested a full Court decision as well as oral argument. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will vacate the decision of the Board and remand the matter.

## I. BACKGROUND

The veteran served on active duty from July 1942 to April 1943. *See* R. at 74. In May 1943, a VA regional office (RO) awarded the veteran service connection for a mental condition. R. at 85. From March 1983 until his death in July 1992, his service-connected condition was continuously rated as 100% disabling. R. at 365, 378. According to VA medical records, the veteran, in May 1992, had been transferred from the Town and Country Nursing Home to a VA medical center (VAMC) for "evaluation of mental status changes." R. at 369–71. After performing various tests and noting the results, the treating physician stated the following:

> Based upon these findings, it was felt that the patient's change in his sensorium was most likely secondary to his underlying psychiatric disorder and a Psychiatric Consultation was obtained. Their evaluation was felt [sic] that both psychiatric as well as medical factors could be contributing to this, specifically the patient's possible [chronic obstructive pulmonary disease] exacerbation.... Theophylline as well as Lithium level[s] were decreased at the time of admission.... It is felt that these values reflect patient's refusal to take these medications over the last several days prior to his admission from the Town and Country Nursing Home.

R. at 370. On June 3, 1992, after the veteran's condition had been stabilized by medi-

cations for his respiratory and psychiatric conditions, he was discharged to the nursing home, where he remained until July 10, 1992. R. at 369–71, 405. Discharge records from the nursing home reflect that, while residing there, the veteran at times had refused treatment and had refused to take his medications. R. at 405. VA medical records, dated in May and June 1992, further reflect that the veteran had been treated at a VA mental health clinic and was noted to have "expressed symptoms of depression, discouragement, and lack of desire to continue on living." R. at 448–49.

On July 18, 1992, the veteran died as the result of cardiopulmonary arrest, which was due to or a consequence of respiratory failure and aspiration pneumonia. R. at 378. The appellant, his surviving spouse, later filed a claim for DIC. R. at 378, 385; *see also* R. at 409–11. At a subsequent hearing before the RO, the appellant's representative stated the following:

> It is ___ that [the veteran] based on his depressive neurosis ___ reaction that his state of mind was to the point where he refused any kind of medication for his physical due to psychiatric and organic problems that he had, which caused him to lose the will to live. It is noted that even though he was on respiratory therapy for his oxygen control and all the different types of medication that he refused to do that, even taking the ___ off. That I believe that in his state of mind and if his medication level was within normal limits in order to keep his depressive neurosis under control that he would have conformed to the medication that was vital to continue to have him being in this, in the land of the living. And I believe that based on his psychiatric condition that it hastened and contributed to his demise. Therefore, I ask that [DIC] be granted based on the fact that his service[-]connected disability contributed in hastening his demise.

R. at 421 (blanks apparently denote words that the transcriber found indecipherable). In further support of her claim, the appellant

then submitted statements from four of the medical personnel at the nursing home, reflecting that the veteran had exhibited uncooperative behavior prior to his death, including refusing to eat, to get out of bed, to undergo breathing therapy, and to take his medications. R. at 431, 436, 438, 440.

The Board, in the decision on appeal, determined that the appellant's claim for service connection for the cause of the veteran's death was not well grounded. In this regard, the Board stated that the veteran was not service connected for a cardiovascular disorder or pulmonary disorder at the time of his death. R. at 12. The Board then concluded that there was no evidence that the veteran had suffered from a cardiovascular or pulmonary condition during service and no evidence relating any such condition to his period of service. R. at 15. The Board further determined that there was no competent evidence relating the veteran's refusal of treatment to his service-connected psychiatric condition and no competent evidence showing that his refusal of treatment had hastened his death. R. at 15–16. With regard to the appellant's claim for DIC under 38 U.S.C. § 1318, the Board determined that, because the veteran's 100% disability rating had not been in effect for the ten years immediately preceding his death, the criteria for DIC under 38 U.S.C. § 1318 had not been satisfied. The Board therefore denied the claim. This appeal followed.

## II. ANALYSIS

### A. Claim 1

Pursuant to 38 U.S.C. § 1310, DIC is paid to a surviving spouse of a qualifying veteran who died from a service-connected disability. *See Hanna v. Brown,* 6 Vet.App. 507, 510 (1994). A veteran's death will be considered service connected where a service-connected disability was either the principal or a contributory cause of death. *See* 38 C.F.R. § 3.312(a) (1998); *see also* 38 C.F.R. § 3.312(b), (c) (1998). A claim for DIC is a new claim; therefore, as with any other claim for service-connected benefits, a DIC claim

must be well grounded. *See* 38 U.S.C. § 5107(a) ("[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded."); *Darby v. Brown,* 10 Vet. App. 243, 245 (1997); *Johnson v. Brown,* 8 Vet.App. 423, 426 (1995).

As to whether the claim is well grounded, the appellant, on appeal, states that "[t]he BVA held that [the appellant] did not file a well[-]grounded claim for service connection for the cause of the veteran's death. [The appellant] disagrees. She also contends that whether or not she filed a well[-]grounded claim ... is not an issue in her case." Appellant's Brief (Br.) at 6. Accordingly, the Court will not address the Board's determination that the claim was not well grounded. However, the appellant, in her brief, further argues, in essence, that, regardless of whether the appellant's claim was well grounded, a remand is necessary because the Board, after noting that the record did not contain " 'the clinical documentation pertaining to the veteran's final hospitalization,' " should have found error in the hearing officer's failure to advise the appellant to obtain and submit such records, contending that such notification is required under 38 C.F.R. § 3.103(c)(2) (1998). Appellant's Br. at 9, 11–12. The Secretary, in his brief, did not reply to that argument.

Pursuant to 38 C.F.R. § 3.103(c)(2), a VA hearing officer has a regulatory duty to "suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position." "The absence of a well-grounded claim ... does not absolve the Secretary of all duties.... [P]ursuant to 38 C.F.R. § 3.103(c)(2) ..., VA hearing officers have a regulatory duty to 'suggest the submission of evidence which the claimant may have overlooked.' " *Brewer v. West,* 11 Vet.App. 228, 235 (1998) (citing *Douglas v. Derwinski,* 2 Vet.App. 435, 441–42 (1992) (en banc), *aff'g on this ground Douglas v. Derwinski,* 2 Vet. App. 103 (1992)); *cf. Morton v. West,* 12

Vet.App. 477, 482–83 (1999) (38 C.F.R. § 3.103(a) does not purport to eliminate the condition precedent in 38 U.S.C. § 5107(a) that an appellant must submit a well-grounded claim in order to trigger the Secretary's duty to assist). In the present case, despite the contentions of the appellant's representative at the hearing before the RO that the veteran's service-connected mental condition had hastened his death, there is no indication in the record that the hearing officer, either during the hearing or any time thereafter, advised the appellant or her representative to submit any additional evidence in this regard. Consequently, the Court concludes that the Board, in the decision on appeal, erred in failing to find error in the hearing officer's failure to suggest to the appellant that she submit medical evidence regarding any relationship between the veteran's service-connected condition and his refusal of treatment and any relationship between such refusal and his death, as well as any additional records concerning the veteran's death. *See Douglas,* 2 Vet.App. at 110 (pursuant to 38 C.F.R. § 3.103(c)(2), where issue of direct service connection for basal-cell carcinoma had been raised, the Board "should have suggested the submission of evidence necessary to establish that claim, such as a medical opinion explicitly concerning the relationship between the veteran's sun exposure in service and the development of the illness"); *cf. Johnson,* 8 Vet.App. at 428 (hearing officer had no duty to notify appellant to obtain evidence that would not have helped prove her claim). Accordingly, the Court will remand the matter in order for the appellant to be given the opportunity to submit any such evidence in support of her claim. *See Proscelle v. Derwinski,* 2 Vet.App. 629, 633 (1992) (Court concluded that, because the hearing officer, contrary to 38 C.F.R. § 3.103(c)(2), failed to suggest that the veteran submit medical evidence relating his current condition to his service-connected disability, the veteran on remand, should be given the opportunity to submit any such evidence).

In light of the above disposition with respect to claim 1, the Court need not address

the other issues raised by the appellant in her brief regarding claim 1, other than to note as to the 38 U.S.C. § 5107(a) duty-to-assist argument, that the Court is bound by the holding of the U.S. Court of Appeals for the Federal Circuit in *Epps v. Gober*, 126 F.3d 1464, 1469 (Fed.Cir.1997), *cert. denied sub nom. Epps v. West*, —— U.S. ——, 118 S.Ct. 2348, 141 L.Ed.2d 718 (1998) (mem.), that "under [38 U.S.C.] § 5107(a), [VA] has a duty to assist only those claimants who have established 'well[-]grounded' (*i.e.,* plausible) claims" (*see Morton, supra*); and as to the argument that statements from nursing home personnel constituted medical, rather than lay, evidence, that the appellant is free to raise these arguments to the Board on remand (*see Kutscherousky v. West,* 12 Vet. App. 369 (1999) (per curiam order); 38 C.F.R. § 3.103(c)(1)). Further, the Court declines to address the arguments raised by the appellant for the first time in her reply brief. *See Carbino v. Gober,* 10 Vet.App. 507, 511 (1997).

### B. Claim 2

When a veteran dies of a non-service-connected condition, the surviving spouse of the deceased veteran is entitled to DIC if the veteran was "in receipt of or entitled to receive" compensation for a service-connected disability that "was continuously rated totally disabling for a period of [ten] or more years immediately preceding death." 38 U.S.C. § 1318(a), (b)(1); *Damrel v. Brown,* 6 Vet.App. 242, 245 (1994). Where the veteran would have met the requirements in 38 U.S.C. § 1318 but for CUE in a prior RO or Board decision, DIC will be paid to the surviving spouse. *See Damrel, supra;* 38 C.F.R. § 3.22(a)(2). In addition, in *Green v. Brown,* 10 Vet.App. 111 (1997), which was issued after the Board decision on appeal, the Court addressed the "entitled to receive" language of section 1318(b) and held as follows:

> [A] CUE claim is not the sole way for a survivor to show the veteran's entitlement as of the time of the veteran's death. Rather, the survivor is given the right to attempt to demonstrate that the veteran

hypothetically would have been entitled to receive a different decision on a service-connection-related issue ... based on evidence in the veteran's claims file or VA custody prior to the veteran's death and the law then or subsequently made retroactively applicable.

*Green,* 10 Vet.App. at 118; *see also Carpenter v. West,* 11 Vet.App. 140, 145 (1998).

As to the appellant's section 1318 DIC claim, both parties agree, as does the Court, that this claim must be remanded in order for the Board to consider, in accordance with *Green* and *Carpenter,* the "entitled to receive" provision of section 1318(b). *See Wingo v. West,* 11 Vet.App. 307, 312 (1998); Appellant's Br. at 30–33; Secretary's Br. at 18–19. On remand, the appellant will be free to request a hearing, in accordance with applicable law and regulation, *see* 38 U.S.C. § 7107(b); *Marsh v. West,* 11 Vet.App. 468, 471 (1998) (right to receive a hearing); 38 C.F.R. §§ 3.103(c), 20.700 (1998), on the section 1318 claim.

### III. CONCLUSION

Upon consideration of the above, the May 29, 1996, BVA decision is VACATED and the matter REMANDED for further proceedings consistent with this opinion. On remand, the appellant will be free to submit additional evidence and argument on the remanded claims in accordance with *Kutscherousky, supra.* The appellant's motion for oral argument is denied because the Court does not believe that such argument would aid materially in the disposition of this appeal. The appellant is free to renew her motion for a full Court decision pursuant to Rule 35(c)(2) of the Court's Rules of Practice and Procedure.