Joseph A. WATAI, Appellant,

v.

Jesse BROWN, Secretary of Veterans Affairs, Appellee.

No. 94–476.

United States Court of Veterans Appeals.

Oct. 10, 1996.

Stephen P. Shea, New York City, was on the brief, for appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; R. Randall Campbell, Deputy Assistant General Counsel; and Michael P. Butler were on the brief, Washington, DC, for appellee.

Before NEBEKER, Chief Judge, and KRAMER and HOLDAWAY, Judges.

NEBEKER, Chief Judge:

The appellant, Joseph A. Watai, appeals from a July 2, 1993, decision of the Board of Veterans' Appeals (Board), which denied entitlement to service connection for end-stage renal disease secondary to glomerulonephritis. For the following reasons, the Court will vacate the Board's decision and remand this matter for further proceedings consistent with this opinion.

## I.

The appellant had active service in the U.S. Army from June 1944 to July 1946. Record (R.) at 19. His service medical records indicate that, on April 8, 1946, he was hospitalized due to "bloody seminal emissions" which he had experienced for the "past 2 months." R. at 23. A subsequent urological examination report includes a notation that the appellant's urethra was "[hem]orrhagic and granular." R. at 45. A report of an intravenous pyelogram states, in part, "There is an angular deformity of the right renal pelvis; however, the [calyces] appear normal. This finding is suggestive of [an] old healed injury. A normal pyelogram is seen on the left." R. at 55. An April 21, 1946, medical record states that the appellant had a "calyceal deformity" of the right kidney, which "ties in with history of renal injury in past—believe it is unrelated to hematospermia, which is due to lower tract inflammation." R. at 44. He was discharged from the hospital on April 25, 1946, with a final diagnosis of hematuria and "[p]rostatitis, chronic, mild, nonvenereal." R. at 53. "Hematuria" is "the presence of blood or blood cells in the urine"; "prostatitis" is "inflammation of the prostate gland." WEBSTER'S MEDICAL DESK DICTIONARY 286, 580 (1986) [hereinafter WEBSTER'S]. A July 1946 discharge examination was negative for any relevant abnormality. R. at 38. In May 1990, the appellant filed a statement in support of a claim for service connection for a kidney condition, "as a result of having blood in my urine while on Active Duty." R. at 92. Later that year he was hospitalized with an impression of end-stage renal disease second-

ary to chronic glomerulonephritis. R. at 103. "Glomerulonephritis" is "nephritis [inflammation of the kidney] marked by inflammation of the [renal] capillaries." WEBSTER'S at 268.

The appellant submitted a July 1991 letter from Dr. Frederick Fong, which stated:

[A]ny conclusions on the relationship of [the appellant's] present kidney problems and hematuria he might have experienced in 1946 would be qualified more as a guess than something based on sound medical principle since many undocumented years have lapsed in the interim. However if I had to make a guess, I would guess that there very well might have been a relationship between [his] hematuria in 1946 and his present kidney problems. As you well know a complaint of hematuria is not usually an incidental complaint.

R. at 124. In an October 1991 letter, which was addressed to the appellant's national service officer and subsequently filed with the Board, Dr. Richard Shim, a specialist in nephrology, made the following statement:

[The appellant] is a 70–year–old male who has end-stage renal disease secondary to chronic glomerulonephritis. According to [the appellant], during his military service he was found to have hematuria. However, it's not known whether [he] has proteinuria or a component of renal failure. As you know, one of the early symptoms of chronic glomerulonephritis is hematuria. Therefore, [the appellant] thinks that his end-stage renal failure might be service connected. *Since I do not have access to his Army medical records, I would not be able to evaluate this aspect of his renal problem.* I would very much appreciate your looking into this matter.

R. at 138 (emphasis added). "Proteinuria" is "the presence of excess protein in the urine." WEBSTER'S at 581. In a July 1992 letter, Dr. Shim stated,

This is to certify that [the appellant] is under my care for end-stage renal disease secondary to chronic glomerulonephritis and has been on maintenance hemodialysis treatment for the past couple of years three times per week. When [he] was younger, apparently he had gross and mi-

croscopic hematuria which [was] probably due to his [underlying] chronic glomerulonephritis.

R. at 154. The appellant testified that he had experienced hematuria two or three times per month since service. R. at 161. With regard to medical treatment following service, he stated,

> I've gone to [VA] from the time I got out of the service and I was told, don't worry about it, it will go away.... You're young, it will go away and it was a constant thing that it bothered me and I wanted to have it resolved, but it was never done.

R. at 157. The RO was unable to locate any relevant VA treatment records dated prior to 1990. R. at 168. The RO and the Board denied the claim. A timely appeal followed.

## II.

Initially, the Court notes that, in its July 2, 1993, decision, the Board also denied a claim for hypertension. As this issue was not raised in the appeal from the Board's decision, the Court holds that the hypertension claim has been abandoned for purposes of this appeal. *See Bucklinger v. Brown,* 5 Vet.App. 435 (1993).

■ A claimant for veterans benefits has "the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." 38 U.S.C. § 5107(a). In order for the appellant's claim for service connection to be well grounded, he must have presented competent evidence of the following: a current disability, a disease or injury incurred in service, and a nexus between the disease or injury and the current disability. *See Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), *aff'd per curiam,* 78 F.3d 604 (Fed.Cir.1996) (table). The appellant has a current diagnosis of end-stage renal disease, secondary to chronic glomerulonephritis, and he was diagnosed with hematuria in service. With regard to the nexus issue, he contends that his glomerulonephritis is linked to the hematuria he experienced in service. Thus, he must have presented competent medical nexus evidence to the effect that this claim is "plausible" or

"possible." *See Grottveit v. Brown,* 5 Vet. App. 91, 93 (1993); *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). As the Board noted in its decision, the medical statements on this issue are couched in cautious terms: Dr. Fong characterized his opinion as a "guess," and Dr. Shim initially stated that, without access to the appellant's service medical records, he was unable to evaluate whether the appellant's renal disability was related to service. Nevertheless, each physician provided competent evidence supporting the medical nexus theory advanced by the appellant: Dr. Fong stated, "[I]f I had to make a guess, I would guess that there very well might have been a relationship between [his] hematuria in 1946 and his present kidney problems. As you well know a complaint of hematuria is not usually an incidental complaint." R. at 124. Dr. Shim stated, "As you know, one of the early symptoms of chronic glomerulonephritis is hematuria," and "When [the appellant] was younger, apparently he had gross and microscopic hematuria which [was] probably due to his [underlying] chronic glomerulonephritis." R. at 138, 154. These statements, while not necessarily conclusive, are competent evidence that the claim is plausible (i.e., that his glomerulonephritis might be related to the hematuria in service). Nothing more is required to meet the medical nexus component of the appellant's initial burden under 38 U.S.C. § 5107(a). *See Lathan v. Brown,* 7 Vet.App. 359, 365–66 (1995); *Grottveit,* 5 Vet.App. at 93. Thus, the Court holds that the claim is well grounded.

In the decision on appeal the Board stated,

> We have noted the representative's request that the case be remanded for a medical opinion. However, the evidence associated with the claims folder contains the [appellant's] medical history from the time he was in service until 1992, the complaints [he] made over the years, the various examining physicians' observations, numerous laboratory reports and x-ray studies, as well as other diagnostic tests. The [appellant] has submitted several statements from private physicians concerning the etiology of his kidney disorder and its relationship to service. These statements are speculative at best concern-

ing relationship to service. We do not feel that further medical opinion is required since [treating] physicians have already provided such opinion, to the degree of certitude possible. The record presented does not otherwise require [a] medical opinion.

R. at 8–9.

■ The Court holds that the Board erred in its conclusion that a medical opinion regarding the etiology of the appellant's kidney disorder was not required to support the decision denying service connection. As the Board noted, the record contains opinions from two of the appellant's treating physicians on the causation issue; however, these opinions, though cautiously worded, are favorable to the appellant's claim. Although the record includes "the various examining physicians' observations, numerous laboratory reports and x-ray studies, as well as other diagnostic tests," there is no medical opinion of record that supports the Board's conclusion that the appellant's chronic glomerulonephritis is not related to service. The Board may not rely on its own unsubstantiated medical conclusions to refute medical evidence favorable to the claimant. *See Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991). The Court concludes that the record is incomplete. Thus, this matter will be remanded for the Board to obtain a medical opinion regarding any causal relationship between the hematuria in service and chronic glomerulonephritis.

■ Where a claimant has submitted a well-grounded claim, "[t]he Secretary shall assist such a claimant in developing the facts pertinent to the claim." 38 U.S.C. § 5107(a). In adjudicating the appellant's claim, the Board noted that Dr. Shim initially said that he was unable to provide an evaluation regarding whether the end-stage renal disease was related to service because "he did not have access to the [appellant's] service medical records." R. at 11. The Board therefore discounted, as "speculative," his statement linking hematuria in service to chronic glomerulonephritis. The Board did not inform the appellant that he could choose to authorize disclosure of these records to his private physician and obtain another opinion. Dr.

Shim's statement indicated that, if he had been permitted access to the service medical records, he might have been able to provide a more fully informed opinion regarding whether the end-stage renal disease was related to the hematuria experienced in service. In this regard, the Court notes that the record on appeal contains reports of examinations and other service medical records relevant to the hematuria diagnosis. The Court holds that, when Dr. Shim's October 1991 letter was filed with the Board, the Secretary was put on notice that the appellant needed to develop further the evidence pertinent to his claim. Under these circumstances, the Secretary had a duty to inform the appellant that the Secretary, upon proper authorization as required by VA regulations, would furnish copies of relevant service medical records to Dr. Shim to enable him to render a less speculative opinion. *See* 38 U.S.C. § 5107(a); 38 C.F.R. §§ 1.514, 1.525, 1.526 (1995). On remand, the appellant will be free to submit additional evidence and argument. *See Quarles v. Derwinski*, 3 Vet. App. 129, 141 (1992). Additionally, as the appellant has never been provided a VA examination, fulfillment of the duty to assist may require "the conduct of a thorough and contemporaneous medical examination, *one which takes into account the records of prior medical treatment*, so that the evaluation of the claimed disability will be a fully informed one." *Green (Victor) v. Derwinski*, 1 Vet. App. 121, 124 (1991) (emphasis added).

### III.

Accordingly, the Board's decision is VACATED and this matter is REMANDED for further proceedings consistent with this opinion.