# United States Court of Appeals for the Federal Circuit

---

**FREDDIE H. MATHIS,**
*Claimant-Appellant*

**v.**

**ROBERT A. MCDONALD, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2015-7094

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 13-3410, Judge Alan G. Lance, Sr.

---

## ON PETITION FOR REHEARING EN BANC

---

Before PROST, *Chief Judge*, NEWMAN, LOURIE, DYK, MOORE, O'MALLEY, REYNA, WALLACH, TARANTO, CHEN, HUGHES, and STOLL, *Circuit Judges*.

DYK, *Circuit Judge,* concurs in the denial of the petition for rehearing en banc.

HUGHES, *Circuit Judge*, with whom PROST, *Chief Judge*, LOURIE, O'MALLEY, TARANTO, and CHEN, *Circuit Judges,* join, concurs in the denial of the petition for rehearing en banc.

REYNA, *Circuit Judge,* with whom NEWMAN and WALLACH, *Circuit Judges,* join, dissents from the denial of the petition for rehearing en banc.

STOLL, *Circuit Judge,* with whom NEWMAN, MOORE, and WALLACH, *Circuit Judges,* join, dissents from the denial of the petition for rehearing en banc.

PER CURIAM.

## O R D E R

A petition for rehearing en banc was filed by claimant-appellant Freddie H. Mathis. A response to the petition was invited by the court and filed by the respondent-appellee Robert A. McDonald. Two motions for leave to file amici curiae briefs were also filed and granted by the court.

The petition, response, and briefs of amici curiae were referred to the panel that heard the appeal, and thereafter were referred to the circuit judges who are in regular active service. A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

The petition for rehearing en banc is denied.

The mandate of the court will be issued on August 26, 2016.

FOR THE COURT

  August 19, 2016                    /s/ Peter R. Marksteiner
        Date                             Peter R. Marksteiner
                                         Clerk of Court

# United States Court of Appeals for the Federal Circuit

---

**FREDDIE H. MATHIS,**
*Claimant-Appellant*

**v.**

**ROBERT A. MCDONALD, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2015-7094

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 13-3410, Judge Alan G. Lance, Sr.

---

DYK, *Circuit Judge*, concurring in the denial of the petition for rehearing en banc.

To me both sides here are partly right and partly wrong or at least partly unclear. I agree with Judge Hughes that the presumption of competence of medical examiners is reasonable, as is placing the burden on the veteran to raise any issue as to competence. At the same time I also agree with Judge Reyna that the veteran should be able to secure information about the examiner's qualifications from the Department of Veterans Affairs ("VA") upon request without securing a Board of Veterans' Appeals or court order. Judge Hughes declines to opine as to when the VA's duty to assist requires it to supply qualifications information and suggests that the veteran

may need to provide a "reason" to suspect an examiner is incompetent. In my view, imposing such an obligation on the VA to routinely provide qualifications information to the veteran in response to a request (as part of the duty to assist) should not place an undue burden on the VA. This case involves no such request. But one might hope that the VA would adopt that approach for the future so that the veteran on request will have the information necessary to mount a challenge to the medical examiner's qualifications.

# United States Court of Appeals
# for the Federal Circuit

---

**FREDDIE H. MATHIS,**
*Claimant-Appellant*

**v.**

**ROBERT A. MCDONALD, SECRETARY OF
VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2015-7094

---

Appeal from the United States Court of Appeals for
Veterans Claims in No. 13-3410, Judge Alan G. Lance, Sr.

---

HUGHES, *Circuit Judge*, with whom PROST, *Chief Judge*,
LOURIE, O'MALLEY, TARANTO, and CHEN, *Circuit Judges*,
join, concurring in the denial of the petition for rehearing
en banc.

I concur in the denial of the petition for rehearing en
banc but write separately to note the limited nature of the
rebuttable presumption and emphasize the VA's obliga-
tions to develop the record and to assist the veteran.
Those duties ensure that a veteran will have access to
information regarding a medical examiner's credentials
when appropriate. And if the VA fails to properly fulfill
these obligations, its decisions are subject to case-specific
review and reversal by both the Board of Veterans Ap-
peals and the Court of Appeals for Veterans Claims, and

to review in this court for improper legal restrictions and any constitutional violations. The limited, rebuttable presumption of competency simply permits the VA to assume that a chosen medical examiner is competent to conduct examinations. It does not provide a presumption that the examination report and the information contained therein is correct—the probative weight of the report still must be determined by the regional office and the Board. And despite this presumption, a veteran may always request information to challenge an examiner's competency from the regional office or the Board. I see no legal reason to object to the limited, rebuttable presumption of competency as long as the Secretary's other legal obligations, including the duty to assist and to develop the record, are fulfilled.

In fact, the Board has frequently justified providing veterans with information regarding examiners' qualifications based on its duty to assist. *See* No. 1501503, 2015 WL 1194124, at *8 (Bd. Vet. App. Jan. 13, 2015) ("Although the RO directed the Veteran to contact the doctor directly for such, the Board finds that ensuring receipt of the CV is, in this instance, subject to the duty to assist the Veteran in substantiating his claim."); No. 1543733, 2015 WL 7875614, at *2 (Bd. Vet. App. Oct. 13, 2015) ("Although the Board's Privacy Act Officer directed the attorney to contact the facilities where the examinations were held for such information, ensuring receipt of the CVs is, in this instance, subject to the duty to assist the Veteran in substantiating his claims."). Likewise, in *Nohr v. McDonald*, the Veterans Court explicitly recognized that the VA's duty to assist and its duty to obtain records obligated the Secretary to assist the veteran in developing the record regarding an examiner's competency. As the court said, "the Board cannot hide behind the presumption of regularity and ignore Mr. Nohr's request for assistance in obtaining documents necessary to rebut the presumption." 27 Vet. App. 124, 133 (2014). Thus, the

Veterans Court has recognized that it would be improper for the VA to both refuse assistance and invoke the presumption.

It is true that the VA will sometimes deny such requests when, for example, a request is made before an examination and there is no reason to suspect that an examiner is incompetent. *See* No. 1452787, 2014 WL 7740599, at *9 (Bd. Vet. App. Dec. 1, 2014). However, that does not prevent this information from being provided at a more appropriate time. Indeed, in at least five different cases where the veteran has requested the CV of his examiner, the VA has been directed to comply with this request. *Nohr*, 27 Vet. App. at 128; No. 1552016, 2015 WL 10004845, at *12 (Bd. Vet. App. Dec. 11, 2015); No. 1543733, 2015 WL 7875614, at *2 (Bd. Vet. App. Oct. 13, 2015); No. 1538484, 2015 WL 6939522, at *1–2 (Bd. Vet. App. Sept. 9, 2015); No. 1501503, 2015 WL 1194124, at *7–8 (Bd. Vet. App. Jan. 13, 2015). More importantly, the VA's duty to assist requires it to consider a claimant's request for further information, including information about an examiner's competency. The scope of that duty, and including the circumstances and timing of when such information should be provided, is not before us in this case and I offer no view on when that duty requires the VA to supply an examiner's CV when requested. It suffices to say that the duty to assist requires the VA "to make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim," 38 U.S.C. § 5103A(a)(1), and, thus, it should not routinely require an order from the Board or the Veterans Court before such necessary information is provided.

In this case, it does not appear that Mr. Mathis ever requested information regarding the examiner's qualifications. *See Mathis v. McDonald*, No. 2015–7094, 2016 WL 1274457, at *1–2 (Fed. Cir. Apr. 1, 2016); *see also Mathis v. McDonald*, No. 2013–3410, 2015 WL 2415067, at *3 (Vet. App. May 21, 2015) ("Here, [Mr. Mathis] points to no

evidence that relates to an objection to the February 2012 examiner on the basis of competence."). In fact, he did not raise the issue of competency until his case was on appeal to the Veterans Court. *Mathis*, 2016 WL 1274457, at \*2. Even in the absence of the presumption of competency, it would still be inappropriate for the Veterans Court or this court to adjudicate the factual question of an examiner's competency in the first instance.

Similar procedural deficiencies existed in the cases that this petition calls into consideration. In *Rizzo v. Shinseki*, 580 F.3d 1288, 1290–91 (Fed. Cir. 2009), there is no mention of an attempt to procure information about the examiner's qualifications; instead, the veteran simply challenged the VA's failure to introduce affirmative evidence of his qualification. In *Bastien v. Shinseki*, 599 F.3d 1301, 1306 (Fed. Cir. 2010), the veteran requested information about the examiner's qualifications and it was provided, but the veteran failed to challenge the examiner's competency. In *Sickels v. Shinseki*, 643 F.3d 1362, 1365 (Fed. Cir. 2011), and *Parks v. Shinseki*, 716 F.3d 581, 586 (Fed. Cir. 2013), the veterans failed to request information about the VA examiners' qualifications. Indeed, in *Parks*, we specifically declined to offer an "opinion on whether an ARNP experienced only in family medicine may be qualified to opine on causes of diabetes." 716 F.3d at 586. We have approved a (rebuttable) presumption of competency, but we have not had occasion—and do not here have occasion—to address how the VA must fulfill its duty to assist, or other legal duties, when questions of competency arise. We have not upheld a denial of a claimant's request for competency information where there was reason to question competency and the information was needed to answer the question. Meanwhile, as noted above, the Veterans Court and the Board have recognized such informational duties where competency is genuinely placed in issue.

It is also important to put the presumption of competency in context in other ways.

First, the dissent appears to conflate an examiner's competence with the adequacy of the exam he performs. *See* Reyna Dissent at 4, 8 n.6. The dissent relies on *Sickels* to support its conclusion that "[t]his court has extended the presumption of competence to apply not only to examiners, but also to their reports." *Id.* at 8 n.6. But *Sickels* does not reach so far. Rather, *Sickels* simply concludes that the presumption of competency includes the presumption that an examiner was "sufficiently informed." *Sickels*, 643 F.3d at 1365. Moreover, like the situation here, *Sickels* relied on the fact that the argument that the examiner was insufficiently informed was not raised before the Board. *Id.* at 1366. Accordingly, the Board was not required to "state reasons and bases demonstrating why the medical examiners' reports were competent and sufficiently informed." *Id.* Nowhere does *Sickels* hold that the presumption of competency extends to the examination report.

Therefore, apart from challenging an examiner's qualifications, the veteran may hold the examiner to the separate standards that demand adequacy of the examiner's opinion and examination. The law is clear that when the Board seeks the opinion of a medical expert, "that opinion must be adequate to allow judicial review." *D'Aries v. Peake*, 22 Vet. App. 97, 104 (2008). Moreover, the opinion must rest on an examination, whether of the veteran or of medical records, adequate to support the opinion offered. *See Barr v. Nicholson*, 21 Vet. App. 303, 311 (2007) ("[O]nce the Secretary undertakes the effort to provide an examination when developing a service-connection claim, even if not statutorily obligated to do so, he must provide an adequate one or, at a minimum, notify the claimant why one will not or cannot be provided."). "A medical opinion is adequate when it is based upon consideration of the veteran's prior medical history and exami-

nations and also describes the disability in sufficient detail so that the Board's 'evaluation of the claimed disability will be a fully informed one.'" *Id.* at 310 (quoting *Ardison v. Brown*, 6 Vet. App. 405, 407 (1994)).

The VA Manual also sets forth internal procedures aimed at producing adequate examination reports. The VA Manual provides that "[a] VA examination report submitted to the rating activity must be as complete as possible," and specifically calls out that "[a] medical opinion [that] is not properly supported by a valid rationale and/or the evidence of record" is an example of a "deficienc[y] that would render an examination insufficient." M21-1MR § III.iv.3.D.3.a. It then directs that if an examination is insufficient, it should be returned to the VA examiner or the contracted provider. *Id.* § III.iv.3.D.3.e.

As this law and guidance makes clear, whether an examiner is competent and whether he has rendered an adequate exam are two separate inquiries. Therefore, simply because an examiner has been presumed competent does not relieve him of his duty to provide an adequate report.

Second, the dissent suggests that the VA periodically engages unqualified examiners, and that the presumption insulates these examiners from any review. *See, e.g.*, Reyna Dissent at 7 ("In reviewing their reports, the Board has indicated that not every doctor is qualified to testify about every issue, and that some issues require special knowledge."); *id.* at 9–10 ("[The presumption] permits the Board to rely on opinions when it knows almost nothing about the person who prepared them. It almost entirely insulates the VA's choice of medical examiners from review."). However, VA regulations require that "competent medical evidence" be "provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions." 38

C.F.R. § 3.159(a)(1).  Examinations provided by the VA
are generally conducted "by VA medical staff, VA contract
providers, or non-VA care providers."  VHA Directive 1046
at 1 (Apr. 23, 2014).  The VA Manual provides that "VA
medical facilities (or the medical examination contractor)
are responsible for ensuring that the examiners are
adequately qualified."  M21-1MR § III.iv.3.D.2.b.  Every
examination report or Disability Benefits Questionnaire
(DBQ) must contain the "signature, printed name and
credentials, phone number and preferably a fax number,
medical license number, and address" of the examiner, as
well as his or her specialty, if a specialist examination is
required.  *Id.*  Although Veterans Service Center employ-
ees are "not expected to routinely review the credentials of
clinical personnel to determine the acceptability of their
reports," they must do so if "there is contradictory evi-
dence of record."  *Id.*

Regardless, even if the VA sometimes selects "unqual-
ified" examiners—an assertion not supported by any
evidence[1]—the dissent overlooks the fact that a veteran
can get access to information about his examiner's qualifi-

---

[1]  The dissent's sole support for this assertion is
*Krugman v. Dep't of Veterans Affairs*, a whistleblower
case from the Merit Systems Protection Board in which
the employee was fired from the VA because, among other
things, he refused to perform compensation and pension
examinations.  Reyna Dissent at 5 n.3 (citing No. 2015–
3156, 2016 WL 1426256, at *1 (Fed. Cir. Apr. 12, 2016)).
As a defense to the agency's removal action, the employee
asserted that he refused to conduct examinations because
he thought that he was not competent to perform exami-
nations.  However, the VA never found him incompetent,
nor did any claimants ever challenge his competency.
Therefore, this case does not demonstrate that the VA
hires unqualified examiners.

cations.  As noted above, in at least five different cases where the veteran has requested the CV of his examiner, the VA has been directed to comply with this request.  *See supra* at 3.  Further, the VA Manual includes a section on "Questions About Competency and/or Validity of Examinations" and directs the VA to *Nohr* for "more information on a claimant's request for information, or complaints, about a VA examination or opinion."   M21–1MR § III.iv.3.D.2.o.

The dissent emphasizes, however, that "[i]f a veteran asks for an examiner's qualifications, the VA will not provide them unless it is ordered to do so by the Board, the Veterans Court, or this court."  Reyna Dissent at 10.  I do not believe that is correct, nor do I believe the dissent's single citation to a Veterans Court decision proves this point.   This case involves only one instance where an order was required to release examiner qualifications, and it demonstrates nothing about whether the VA has willingly provided this information in the majority of other cases.   In fact, it at most suggests that when the VA denies requests for examiner qualifications, the system is equipped to remedy these denials.

Finally, the dissent fails to appreciate the nature of the medical evidence used by the VA.  Specifically, the VA may order a medical examination, but the agency is not required to provide a medical examination or opinion if the record already contains sufficient medical evidence for the VA to make a decision on the claim.  *See* 38 U.S.C. § 5103A(d)(1).  By the dissent's account, the competency of the doctors that performed any examinations contained in this "sufficient medical evidence," which may be decades old in any given case, would need to be established before the VA may rely on it to make a decision on the claim.

The VA provides over 1 million disability evaluations yearly and in 2015 alone, the Veterans Health Administration completed 2,899,593 individual disability bene-

fits questionnaires and/or disability examination templates. Resp. Br. at 8. The dissent has provided no guidance as to how the elimination of this limited presumption would work with regard to the millions of disability evaluations that have already been provided and form the basis for the continuing evaluation of the millions of pending claims for benefits. Would the Secretary be required to provide an affidavit or some other supporting evidence of the examiner's competence before the Regional Office or the Board could rely on that examination report? Would the Secretary have to appoint a specialist for each particular ailment a veteran alleges, as Mathis implies would be necessary? If so, that will create an incredible burden and may impair the operations of the VA, a result that will negatively impact veterans. Consequently, this court should not revise a procedure that is one small piece of a very complicated and long process, especially in a case that does not demonstrate a problem with the use of that procedure.

I am certainly sympathetic to the concerns raised regarding the presumption of competency, and its potential for misuse by the VA. The Secretary should be mindful of its obligations and not reflexively rely on a presumption of competency. But our review is limited and I see no legal impediment to a rebuttable presumption of competency as long as it is properly confined and consistent with the Secretary's other legal obligations. Thus, I respectfully concur in the denial of rehearing en banc.

# United States Court of Appeals
# for the Federal Circuit

---

**FREDDIE H. MATHIS,**
*Claimant-Appellant*

**v.**

**ROBERT A. MCDONALD, SECRETARY OF
VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2015-7094

---

Appeal from the United States Court of Appeals for
Veterans Claims in No. 13-3410, Judge Alan G. Lance, Sr.

---

REYNA, *Circuit Judge,* with whom NEWMAN and WALLACH,
*Circuit Judges*, join, dissenting from denial of rehearing
en banc.

In declining to undertake an *en banc* review, the court
leaves in place a judicially created evidentiary presump-
tion that in application denies due process to veterans
seeking disability benefits. The presumption, that the
Veterans Administration ordinarily and routinely selects
competent medical examiners as a matter of due course,
was created void of any evidentiary basis. Its application
has resulted in a process that is inconsistent with the
Congressional imperative that the veterans' disability
process be non-adversarial, and that the VA bears an
affirmative duty to assist the veteran. In the face of these

circumstances, the government's cries concerning its administrative burdens do not resonate. I dissent, therefore, from my colleagues' decision not to undertake an *en banc* review of these considerations.

## I. VETERANS AND EXAMINERS

Mr. Mathis served in the U.S. Air Force from August 1980 to August 2002. J.A. 1. In 2009 he applied for disability benefits through the Veterans Administration for his pulmonary sarcoidosis, shortly after being diagnosed with the condition. J.A. 56. In March 2011, Mr. Mathis had a hearing before a Decision Review Officer. J.A. 51. At the hearing, he and his ex-wife testified that his breathing difficulties began while he was in the military. J.A. 57. He also submitted statements from two of his fellow service members that described Mr. Mathis's shortness of breath during active military service and since that time. *Id.*

In February 2012, the VA requested a medical opinion on whether Mr. Mathis's sarcoidosis was due to military service or began while he was in service. J.A. 2, 46.[1]

---

[1]    When a veteran applies for disability benefits, the VA is at times required to provide a medical examination or opinion. 38 U.S.C. § 5103A(d). The medical professionals providing such examinations and opinions are called examiners or "compensation and pension" examiners. *Cf.* J.A. 45. Examiners are employed by the VA or are outside contractors.

VA regional offices use the opinions prepared by examiners in determining whether to award a veteran disability benefits. The decision whether to award benefits often turns on whether the disability is shown to be connected to the veteran's military service. *See, e.g.*, *McClain v. Nicholson*, 21 Vet. App. 319, 320–21 (2007). In other words, as in this case, the service connection

An examiner reviewed Mr. Mathis's claims file and provided the VA with an opinion indicating that Mr. Mathis's sarcoidosis was "less likely than not (less than 50 percent probability) incurred in or caused by the claimed in-service injury, event, or illness." J.A. 47. The following two paragraphs comprise the examiner's analysis:

> While veteran claims to have had some pulmonary symptoms while in service, there is nothing to support that they were related to sarcoidosis. I am not doubting the validity of the letters written by [Mr. Mathis's fellow service members] Mr. Jackson and Mr. Adams stating that the veteran had some breathing issues while in service. He may very well have had such issues. But the Sarcoidosis was doagnosed [sic] 7 years after service. There is nothing to indicate that it existed within one year of service. Had veteran had significant breathing issues post service, one can assume he would have sought medical care, and a simple [chest X-ray] would have been ordered.

> As the present lack of documentation exists, it would have been an extreme stretch, and unreasonable, to opine that veteran's sarcoidosis existed within one year of service.

J.A. 47.

The VA denied Mr. Mathis's claim for benefits after reviewing the examiner's opinion and the Board affirmed, explicitly relying on the examiner's opinion in its analysis.

---

issue is often dispositive. If a VA regional office denies a veteran benefits, the veteran may appeal to the Board of Veterans' Appeals (the "Board"), and then the United States Court of Appeals for Veterans Claims (the "Veterans Court"), this court, and the U.S. Supreme Court.

J.A. 57–61. Mr. Mathis timely appealed to the Veterans Court. J.A. 1. At the Veterans Court, Mr. Mathis challenged the Board's reliance on the examiner's opinion. *Mathis v. McDonald*, No. 13-3410, 2015 WL 2415067, at *2–3 (Vet. App. May 21, 2015). He asserted that "there are types of sarcoidosis characterized by a slow and gradual development of symptoms," and that the examiner's analysis was inconsistent with this, seeming to implicitly indicate that "all types of sarcoidosis necessarily have a quick and rapid onset of severe symptomatology." *Id.* at *3.

Mr. Mathis argued that the report contained inadequate analysis, but the Veterans Court explained that "there is no reasons or bases requirement imposed on [an] examiner." *Id.* at *2 (quoting *Acevedo v. Shinseki,* 25 Vet. App. 286, 293 (2012)). Similarly, while Mr. Mathis complained that the examiner cited no medical authorities, the Veterans Court explained that an examiner is presumed to know about medical authorities under the presumption of competence:

> The presumption that VA medical examiners are competent "includes a presumption that physicians remain up-to-date on medical knowledge and current medical studies." *Monzingo v. Shinseki,* 26 Vet. App. 97, 106–07 (2012) (holding that the mere fact that an "examiner did not cite any studies is not evidence that" he is unaware of such studies and is not a basis for finding an examination report inadequate).

*Id.* at *3.

Mr. Mathis also objected to the VA's failure to establish that the examiner was "qualified to offer an expert opinion" on the issue, which he argued required "specialized knowledge, training or experience in the field of

pulmonology." *Id.* at *3. The record indicated merely that the examiner was a "staff physician."[2] J.A. 49. The Veterans Court explained that the "VA benefits from a presumption that it has properly chosen a person who is qualified to provide a medical opinion in a particular case." *Id.* at *3 (quoting *Parks v. Shinseki*, 716 F.3d 581, 585 (Fed. Cir. 2013)). It explained that a veteran's "first step" in overcoming the presumption is to object at the Board to an examiner's competence, and Mr. Mathis had not done so. *Id.*

On appeal to this court, Mr. Mathis argued that the presumption of competence is inconsistent with the non-adversarial nature and pro-claimant procedures established by Congress for veterans. He argued that the presumption of regularity should not have been applied to the VA and its outside contractors' processes of selecting examiners.[3] He argued that the presumption of regulari-

---

[2]    The briefing in this case indicates that Mr. Mathis believes that the examiner was a family practice doctor, *see, e.g.*, Appellant's Br. 30, but support for this is not in the record.

[3]    In *Krugman v. Dep't of Veterans Affairs*, No. 2015-3156, 2016 WL 1426256, at *1 (Fed. Cir. Apr. 12, 2016), a whistleblower case, this court was afforded a rare view of how the VA selects examiners and the grounds it relies on to establish competency. In that case, the VA hired Dr. Krugman, an anesthesiologist, to be an Associate Chief of Staff for Primary Care in September 2010. J.A. 5, 12. He was hired to perform a variety of responsibilities, including having "oversight responsibilities" for several outpatient clinics in the south Texas area and being the examiner for compensation and pension examinations in that area. J.A. 12, 125, 158–59. The record shows that when he was hired by the VA, Dr. Krugman had not treated a patient in almost ten years. J.A. 25–26, 43. The

ty should only apply to routine, non-discretionary, and ministerial procedures, not the competency of medical examiners and their opinions.

## II. *RIZZO* WAS WRONGLY DECIDED

In *Rizzo*, this court affirmed the Veterans Court's application of the presumption of regularity to the VA's choice of examiners. *Rizzo v. Shinseki*, 580 F.3d 1288, 1291 (Fed. Cir. 2009). In *Rizzo*, neither this court's decision nor the Veterans Court's decision cited evidence about the VA's—or its contractors'—processes for selecting examiners. *Id.* at 1292; *Rizzo v. Peake*, No. 07-0123, 2008 WL 4140421, at *2 (Vet. App. Aug. 26, 2008). The presumption, therefore, was created without any evidentiary basis that the VA's process for selecting examiners regularly yielded competent examiners. This was improper. A "presumption should be predicated on evidence that gives us confidence that a particular procedure is

---

VA wanted him to prepare to conduct examinations by taking an online course and training for a week with an experienced examiner. J.A. 158–60, 303. He took the online course in October 2010 but did not undertake the in-person training. J.A. 160, 303. The VA granted him privileges to perform examinations on September 8, 2010 for one facility and on May 5, 2011 for a different facility. J.A. 134–35; Oral Arg. 15:04–16:38.

When asked to perform compensation and pension examinations, Dr. Krugman refused on grounds that he was not qualified. J.A. 161–62, 210, 303. The refusal formed one of the complaints against him when the VA fired him. J.A. 303; Resp. Br. 4. He argued on appeal that his refusal to perform examinations could not have supported his firing because he did not believe he was qualified to perform them, and that a week of in-person training would not have made him qualified. Pet'r Br. 30–31.

carried out properly and yields reliable results in the ordinary course." *Mathis v. McDonald*, No. 2015-7094, 2016 WL 1274457, at \*5 (Fed. Cir. Apr. 1, 2016) ("*Mathis II*") (citing *Posey v. Shinseki,* 23 Vet. App. 406, 410 (2010) and *Malack v. BDO Seidman, LLP,* 617 F.3d 743, 749 (3d Cir. 2010)).

Additionally, the presumption of regularity has typically been only applied to routine, non-discretionary, and ministerial procedures. *Mathis II* at \*5 (citing, for example, *Davis v. Principi*, 17 Vet. App. 29, 37 (2003)). In *Rizzo*, this court affirmed the presumption's application to something far from a routine, ministerial procedure, a process by which medical examiners are selected to provide expert opinions on medical issues.

The presumption of competence does not apply to private physicians providing reports on behalf of veterans. In reviewing their reports, the Board has indicated that not every doctor is qualified to testify about every issue, and that some issues require special knowledge. *See, e.g.*, No. 1512074, 2015 WL 2161715, at \*16 (Bd. Vet. App. Mar. 20, 2015). This means that, under the presumption, the VA is deemed to have chosen a doctor, nurse, or other examiner who is competent to speak on the specific issue in each case. It is unclear why this court or the Veterans Court would assume that the VA's process for adjudicating benefits yields reliable results in the ordinary course, given that the Board remands almost half (47% in 2015) of disability compensation appeals back to the regional offices.[4] Specifically, because the presumption of competence was created on a basis that is devoid of evidence showing that the VA's process for selecting examiners is a

---

[4]    U.S. Dep't of Veterans Affairs, *Board of Veterans' Appeals Annual Report Fiscal Year 2015* 26 (2016), available at http://www.bva.va.gov/docs/Chairmans_Annual_Rpts/BVA2015AR.pdf.

regular process that always results in a qualified examiner being selected, this court in *Rizzo* was wrong to affirm the Veterans Court's creation of the presumption of competence.[5, 6]

## III. DUE PROCESS

This court has held that a veteran's entitlement to disability benefits is a property interest protected by the Due Process Clause of the Fifth Amendment to the United States Constitution. *Cushman v. Shinseki*, 576 F.3d 1290, 1298 (Fed. Cir. 2009); *Sprinkle v. Shinseki*, 733 F.3d

---

[5] As my concurring opinion noted, the VA had recently admitted that it used unqualified examiners for some traumatic brain injury (TBI) examinations. *Mathis II* at \*15 (Reyna, J., concurring). According to VA guidelines, initial examinations for TBI must be performed by only certain types of doctors, unlike most other diseases and conditions, for which there are no such limiting guidelines. *Id.* at 13, 15. The VA recently admitted further that more than 24,000 veterans received initial examinations for TBI conducted by unqualified examiners. U.S. Dep't of Veterans Affairs, VA Secretary Provides Relief for Veterans with Traumatic Brain Injuries (June 1, 2016), http://www.va.gov/opa/pressrel/pressrelease.cfm?id=2795.

[6] This court has extended the presumption of competence to apply not only to examiners, but also to their reports. *See Mathis II* at \*8, n. 2 (citing *Sickels v. Shinseki*, 643 F.3d 1362, 1366 (Fed. Cir. 2011) ("The argument that a VA medical examiner's opinion is inadequate is sufficiently close to the argument raised in *Rizzo* that it should be treated the same."). The Board has indicated that *Sickels* means that "in the absence of a challenge to a VA medical opinion, it is presumed to be adequate." No. 1235436, 2012 WL 6556998, at \*11 (Bd. Vet. App. Oct. 12, 2012).

1180, 1185 (Fed. Cir. 2013). Since the presumption of competence leaves veterans with no way to effectively challenge the nexus between the VA examiners' qualifications and their opinions, due process afforded other individuals in other legal disciplines is not extended to veterans. There is no reasoned justification or evidentiary support for treating veterans differently with respect to medical opinions.

A veteran's claim to disability benefits often will rise or fall based on whether the Board believes an examiner's testimony. *Gambill v. Shinseki*, 576 F.3d 1307, 1322–23 (Fed. Cir. 2009) (Bryson, J., concurring); *id.* at 1324 (Moore, J., concurring). Yet, a veteran's ability to challenge an examiner's competency is limited because the VA does not by default disclose any information about the examiner's qualifications. *Mathis II* at *8 (Reyna, J., concurring).[7] Veterans are unable to confront examiners through voir dire, cross-examination, or interrogatories. *See, e.g.*, VA Manual M21-1MR § III.iv.3.D.2.o ("VA's C&P claim adjudication system does not have a procedure for completion of interrogatories by VA personnel."); No. 1340011, 2013 WL 7220329, at *6 (Bd. Vet. App. Dec. 4, 2013) ("There is no provision for interrogatories to the specialist."); 38 C.F.R. §§ 20.700(c), 20.706 (no cross-examination is permitted at Board hearings); *Gambill*, 576 F.3d at 1324 (Moore, J., concurring) (arguing that a veteran ought to be "provided with the opportunity to confront the doctors whose opinions [the VA] relies upon to decide whether veterans are entitled to benefits").

The presumption allows the VA to rely on examiners' opinions to deny veterans benefits without disclosing anything about their qualifications to the veteran or to the Board. It permits the Board to rely on opinions when

---

[7] The VA does not even obtain information about an examiner's qualifications in every case. Appellee Br. 17.

it knows almost nothing about the person who prepared them. It almost entirely insulates the VA's choice of medical examiners from review. On the other hand, individuals providing examinations *on behalf of veterans* have their qualifications and credentials carefully reviewed by the Board before their opinions are given weight.[8] *See, e.g.*, No. 1512074, 2015 WL 2161715, at *16 (Bd. Vet. App. Mar. 20, 2015). The presumption severely limits veterans' ability to effectively challenge adverse examiner opinions.

Even if a veteran objects to an examiner's competence before the Board, a veteran must make a "specific" objection to an examiner's competence—not merely a "general" one—before the Board will review the examiner's competence. *Mathis II* at *9, n. 8 (Reyna, J., concurring) (citing cases). Presumably, a specific objection entails pointing to a specific aspect of an examiner's qualifications. But with no information available on the examiner's qualifications, a veteran is hindered in, if not entirely precluded from, making such a specific objection before the Board.

If a veteran asks for an examiner's qualifications, the VA will not provide them unless it is ordered to do so by the Board, the Veterans Court, or this court. *See, e.g.*, *Nohr v. McDonald,* 27 Vet. App. 124, 128 (2014) (finding that the Board erred in denying a veteran's request for an examiner's CV when the veteran had identified an ambiguous statement in the examiner's report that suggested irregularity in the process of selecting the examiner); *see also Mathis II* at *9, n. 5 (Reyna, J., concurring). The Board may refuse to order the VA to do so when the veteran has not already raised a specific objection to the

---

[8]    "Congress expressly permits veterans seeking service-connected disability benefits to submit reports from private physicians." *Gardin v. Shinseki*, 613 F.3d 1374, 1378 (Fed. Cir. 2010) (citing 38 U.S.C. § 5125).

examiner's competence. No. 1452787, 2014 WL 7740599 at *8 (Bd. Vet. App. Dec. 1, 2014). This can create a situation in which the veteran must make a specific objection to an examiner's competence before she can learn the examiner's qualifications; otherwise, the Veterans Court and this court will deny a veteran's challenge to the competency of the examiner. The veteran is rendered hapless, caught in a classic Joseph Heller catch-22-like circumstance.

As it does in cases involving medical opinions provided by professionals hired by the veteran, the Board should be able to examine a VA examiner's qualifications and weigh them in determining the persuasive value of an examiner's reports rather than being instructed by this court to presume that the examiner is competent. The VA's incentive to not provide evidence about the examiner's qualifications will be strongest when an examiner is not qualified or is barely qualified, the very circumstances where the veteran, the Board, and the Veterans Court ought to know an examiner's qualifications.

Ordinarily, before an expert opinion may be relied upon, the expert's competence must be established. *See, e.g.*, *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93, n. 10 (1993); Fed. R. Evid. 104. This court has explained that "competency requires some nexus between [an examiner's] qualification[s] and opinion." *Parks v. Shinseki*, 716 F.3d 581, 585 (Fed. Cir. 2013). Similarly, the Supreme Court has explained that an expert witness is permitted to testify on matters outside his firsthand knowledge because of "an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Daubert*, 509 U.S. at 592. VA medical examiners are "'nothing more or less than expert witnesses' who provide opinions on medical matters." *Townsend v. Shinseki*, No. 12-0507, 2013 WL 2152126, at *5 (Vet. App. May 20, 2013) (quoting *Nieves-Rodriguez v. Peake*, 22 Vet. App. 295, 302 (2008)).

The regulation applicable here—38 C.F.R. § 3.159(a)(1)—is analogous to Federal Rule of Evidence 702. Under Rule 702, district courts first determine if an expert witness is competent to testify on a subject before relying on the expert's testimony. *See, e.g.*, *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016). In patent cases, "[t]estimony proffered by a witness lacking the relevant technical expertise fails the standard of admissibility under Fed. R. Evid. 702." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1363 (Fed. Cir. 2008). The Veterans Court has explained that the "rules on expert witness testimony" in the Federal Rules of Evidence "provide useful guidance" for the Veterans Court. *Nieves-Rodriguez*, 22 Vet. App. at 302.

The Supreme Court's decision in *Richardson v. Perales* supports a finding that, under the presumption of competence, veterans lack due process. 402 U.S. 389 (1971). In *Perales*, the Supreme Court concluded that procedural due process did not preclude five physicians' written reports from being admitted into a social security disability claim hearing without cross-examination based on several specific factors that would "assure underlying reliability and probative value." *Id.* at 402–03. Several of those factors are not met here. First, the claimant in *Perales*, unlike the veterans here, had a right to subpoena the reporting physicians. Second, the physicians in *Perales* were all practicing physicians, unlike some career examiners at the VA. Third, the examinations in *Perales* were all clearly "in the writer's field of specialized training." *Id.* at 404. In contrast, the VA "broadly recommends assigning generalists except in unusual, ill-defined cases." *Mathis II* at *6.

Several circuit courts have found that social security claimants have an absolute right to cross-examine a reporting physician. This stems from the Supreme Court's reference in *Richardson v. Perales* to a claimant's

"right to subpoena the reporting physician and thereby provide himself with the opportunity for cross-examination of the physician." 402 U.S. at 402; *see, e.g.*, *Lidy v. Sullivan*, 911 F.2d 1075, 1077 (5th Cir. 1990).

"In the veterans' uniquely claimant friendly system of awarding compensation, breaches of the duty to assist are at the heart of due process analysis." *Cook v. Principi*, 318 F.3d 1334, 1354 (Fed. Cir. 2002) (Gajarsa, J., dissenting). "If the Constitution provides no protection against the occurrence of such breaches, then the paternalistic interest in protecting the veteran is an illusory and meaningless assurance." *Id.* The presumption of competence is inconsistent with the VA's duty to assist veterans and the non-adversarial nature of the proceedings. *See Hayre v. W.*, 188 F.3d 1327, 1331–32 (Fed. Cir. 1999); 38 U.S.C. § 5103A. "Congressional mandate requires that the VA operate a unique system of processing and adjudicating claims for benefits that is both claimant friendly and non-adversarial." *Hayre*, 188 F.3d at 1331. "An integral part of this system is embodied in the VA's duty to assist the veteran in developing facts pertinent to his or her claim." *Id.*

The duty to assist has been found to require the VA to provide the veteran with his service medical records, upon request, and to inform the veteran of that right. *Watai v. Brown*, 9 Vet. App. 441, 444 (1996) ("[T]he Secretary had a duty to inform the [veteran] that the Secretary, upon proper authorization as required by VA regulations, would furnish copies of relevant service medical records to [his private physician] to enable him to render a less speculative opinion."). Denying veterans information about the qualifications of their examiners denies them both the assistance necessary to make their claims and their due process rights in making those claims.

IV. Administrative Burden

The VA makes two arguments why the presumption should not be removed. First, the VA argues that "in the absence of the presumption established by *Rizzo*, 'a concrete, clear standard for determining the sufficiency of an examiner's qualifications to conduct a medical examination' would be needed." Resp. to Pet. for Reh'g En Banc 12 (quoting *Mathis II* at \*7). As support, the VA states that the "VA provides an enormous volume of compensation examinations annually." *Id.*

The VA is correct. Overturning *Rizzo* would require the VA to apply a standard for selecting competent examiners. The VA, however, overlooks that it has already promulgated a clear standard for the VA and the Board to apply when deciding whether a medical examiner is competent:

> (1) Competent medical evidence means evidence provided by a person who is qualified *through education, training, or experience to offer medical diagnoses, statements, or opinions.* Competent medical evidence may also mean statements conveying sound medical principles found in medical treatises. It would also include statements contained in authoritative writings such as medical and scientific articles and research reports or analyses.

38 C.F.R. § 3.159(a)(1) (emphasis added).

The Board can assess whether an examiner meets this regulation upon review of her education, training, or experience.[9] Indeed, this is the standard the Board

---

[9] To be clear, the Board—not this court—should decide what qualifications are needed to satisfy 38 C.F.R. § 3.159(a)(1) in application. Whether an examiner has the

applies when it reviews the credentials of private physicians providing opinions and examinations on behalf of veterans, for whom there is no presumption. *See, e.g.*, No. 1100100, 2011 WL 749935, at *8 (Bd. Vet. App. Jan. 3, 2011) ("The Board finds that the private physician is qualified through education, training, and experience to offer a diagnosis and an opinion in this case.") (citing 38 C.F.R. § 3.159).

Second, the VA defends the presumption of competence on the basis that removing it "would impair the efficiency of" the VA's "provision of medical examinations and opinions." Resp. to Pet. for Reh'g En Banc 13. It is not clear that the substantive content, the quality of the opinion, would be affected if the presumption of competence were removed. It is clear that removing the presumption would result in an administrative record upon which the Board could properly review an examiner's qualifications when weighing the persuasiveness of her reports. In addition, having an examiner's CV would permit a veteran to determine whether or not to challenge the examiner's competence.

But in the long run, removing the presumption of competence could improve the efficiency of the judicial review process in VA cases. As a veteran's "first step" in overcoming the presumption of competence is to object at the Board, if the record contains no evidence about an examiner's competence, the Board will have to remand to the VA for such evidence whenever a veteran sufficiently

---

necessary training and experience is a factual determination. *See, e.g.*, *Bradshaw v. Richey*, 546 U.S. 74, 79 (2005); *Mass. Mut. Life Ins. Co. v. Brei*, 311 F.2d 463, 472 (2d Cir. 1962). Removing the presumption will not mean that the VA always has to have specialists perform examinations. *See, e.g.*, No. 0838133, 2008 WL 5511667 at *7 (Bd. Vet. App. Nov. 5, 2008).

objects.  *Cf. Mathis II* at *9, n. 6 (Reyna, J., concurring) (citing cases where the Board remanded for the VA to provide a curriculum vitae).  And the Veterans Court has already repeatedly needed to remand cases to the Board when a veteran had sufficiently challenged an examiner's qualifications to the Board but the Board failed to analyze the examiner's competence.  *See id.* at *9, n. 9.

For the foregoing reasons, I respectfully dissent.

# United States Court of Appeals
# for the Federal Circuit

---

**FREDDIE H. MATHIS,**
*Claimant-Appellant*

**v.**

**ROBERT A. MCDONALD, SECRETARY OF
VETERANS AFFAIRS,**
*Respondent-Appellee*

---

2015-7094

---

Appeal from the United States Court of Appeals for
Veterans Claims in No. 13-3410, Judge Alan G. Lance, Sr.

---

STOLL, *Circuit Judge*, with whom NEWMAN, MOORE, and
WALLACH, *Circuit Judges*, join, dissenting from denial of
rehearing en banc.

I believe the court should hear this case en banc to
reevaluate the presumption of competence afforded to VA
medical examiners and their opinions under our current
law. I question the propriety of such a presumption in a
uniquely pro-claimant and non-adversarial system.

I am also troubled by the idea that the VA itself might
apply the presumption when a veteran challenges, at the
agency level, the competence of the examiner or the
conclusions of the medical opinion. Even if we keep the
presumption of competence, like the presumption of

regularity from which it stems, it should apply to judicial review of agency action.  *See Rizzo v. Shinseki*, 580 F.3d 1288, 1292 (Fed. Cir. 2009) ("The presumption of regularity provides that, in the absence of clear evidence to the contrary, the *court* will presume that public officers have properly discharged their official duties." (emphasis added) (internal citation omitted)).  The agency itself should not rely on the presumption that it followed its rules when evaluating the application of those very rules. The VA's Adjudication Procedures Manual suggests, however, that the VA considers the presumption of competence established by this court in *Rizzo*.  Specifically, where the agency determines that a veteran has raised a concern regarding the medical examiner's competence, the procedures instruct that, among other seemingly appropriate considerations, the agency should note that "[t]here is a presumption that a selected medical examiner is competent."  VA Adjudication Procedures Manual, M21–1MR, Part III, Subpart iv, ch. 3, § D(2)(o) (change date April 28, 2016).

I believe this is an important issue, and it warrants en banc review.  For these reasons, I respectfully dissent from the denial of the petition for rehearing en banc.