http://www.va.gov/vetapp16/Files4/1634356.txt

Citation Nr: 1634356 
Decision Date: 08/31/16 Archive Date: 09/06/16

DOCKET NO. 10-26 468 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Diego, California

THE ISSUES

1. Entitlement to service connection for diabetes mellitus, type II, to include as secondary to herbicide exposure.

2. Entitlement to service connection for hypertension, to include as secondary to diabetes mellitus.

3. Entitlement to service connection for an eye disorder, to include as secondary to diabetes mellitus.

4. Entitlement to service connection for a variously diagnosed psychiatric disorder other than posttraumatic stress disorder (PTSD). 

REPRESENTATION

Appellant represented by: The American Legion

ATTORNEY FOR THE BOARD

Jason A. Lyons, Counsel

INTRODUCTION

The Veteran served on active duty from August 1971 to May 1980. 

These matters are before the Board of Veterans' Appeals (Board) from a July 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in San Diego, California. The Veteran was previously scheduled for a February 2013 Travel Board hearing, but cancelled in advance of that proceeding and did not reschedule, and so his hearing request is deemed withdrawn. See 38 C.F.R. § 20.704(e) (2015). 

In February 2015, the Board remanded this case for further development. In that decision it was noted that the Veteran specifically did not want to claim he had PTSD. As such the issue has been characterized as set forth on the title page. These issues are now back for further review.

Apart from the claim for service connection for a psychiatric disorder, the remainder of the appeal is addressed in the REMAND portion of the decision below and is REMANDED to the AOJ.

FINDINGS OF FACT

1. The presently diagnosed mental health disorders which the Veteran manifests, including depression and anxiety, are not shown to be incurred in active military service or otherwise resulting from that service, including by October 2015 VA examiner's opinion weighing against the claim. 

2. The Veteran did not have mental health disability of a psychosis as recognized chronic disease for VA purposes, within one-year of his separation from service.

CONCLUSION OF LAW

The criteria are not met to establish service connection for an acquired psychiatric disorder other than PTSD. 38 U.S.C.A. §§ 1110, 1112, 1131, 1137, 5103, 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.384 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

VCAA Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), codified at 38 U.S.C.A. §§ 5100, 5102, 5103A, 5107, 5126 (West 2014) sets forth VA's duties to notify and assist a claimant with the evidentiary development of a claim for compensation or other benefits. See also 38 C.F.R. §§ 3.102, 3.159 and 3.326 (2015). VCAA notice must, upon receipt of a complete or substantially complete application for benefits, inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that the claimant is expected to provide; and (3) that VA will obtain on his behalf. The Veteran was advised to submit any evidence, including records supporting his claim, and presumably he has submitted all available evidence.

The Board finds compliance with the VCAA in this case, the duty to notify met by timely notice correspondence sent before RO rating decision adjudicating the claim. The duty to assist was met through obtaining Service Treatment Records (STRs), service personnel records, VA outpatient records, and arranging for VA Compensation and Pension examination and medical opinion. The February 2015 Board remand directives have been accomplished as they pertain to the claim being decided. The Veteran himself has provided lay witness statements on his behalf. As indicated, the scheduled Travel Board hearing was cancelled in advance, and was not rescheduled. There is no indication of further evidence or information to obtain at this stage. Accordingly, the claim may be fairly adjudicated. 

Applicable Law and Regulations

Service connection may be granted for disability from injury or disease that was incurred in or aggravated during active duty service. 38 U.S.C.A. §§ 1110, 1131 (West 2014); 38 C.F.R. § 3.303(a) (2015). Service connection is also available for any disease diagnosed after discharge when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. See 38 C.F.R. § 3.303(d). 

Basic requirements for service connection are (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) causal relationship between the disability and service. See generally, Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

When there was chronic disease diagnosed in service, later episodes are service- connected unless clearly refuted. For non-chronic disease noted in service, continuity of symptomatology from the time of service discharge is required. See 38 C.F.R. § 3.303(b). But see Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013) (limited continuity of symptomatology as a principle to those specific diseases for which presumptive service connection is available under 38 C.F.R. § 3.309(a)).

Under the law on presumptive service connection the "chronic diseases" denoted under 38 C.F.R. § 3.309(a), to include psychoses, will be presumed to have been incurred in service if shown to a compensable degree within one year after separation. 38 U.S.C.A. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307, 3.309. 

For VA compensation purposes including that of presumptive service connection, the term "psychosis" is defined under 38 C.F.R. § 3.384 as any of the following: brief psychotic disorder; delusional disorder; psychotic disorder due to another medical condition; other specified schizophrenia spectrum and other psychotic disorder; schizoaffective disorder; schizophrenia; schizophreniform disorder; and substance/medication-induced psychotic disorder.

Background and Case Analysis

Having reviewed evidence for this claim, the Veteran's Service Treatment Records do not show any symptoms, diagnoses, or treatment for mental health problems. The Veteran has denied symptoms in-service, explaining they manifested after his separation from service. The Veteran's service personnel file from available records indicates one entry from October 1972 stating a reduced evaluation mark in "professional performance" due to what was claimed as routinely irresponsible set of working habits, and that the Veteran was deemed capable of doing a "good job," but ostensibly did not always apply himself; the record states "this man is not mentally deficient, he just has no interest in doing the hard manual labor involved in being a deck seamen." A subsequent evaluation indicates the military performance evaluation rater's viewpoint that there had been improvement.

Records of VA Medical Center (VAMC) outpatient evaluation show on May 2009 consult with a VA licensed social worker, the Veteran described difficulty with work-related tasks, concentration, decreased energy, difficulties with memory and motivation, and increased irritability and social withdrawal, occasional passive suicidal ideation, feeling like a burden to his family, and guilt and anger. He stated that when he returned from Vietnam he had nightmares and flashbacks, but denied any PTSD symptoms at that time. The Veteran reported that he had depression 25 years ago and was able to get it under control then, further stating also he noticed the current depressive symptoms 7 years ago and these had been getting progressively worse. Past history included 5 years taking amitriptyline, and Xanax for anxiety and panic attacks when he was discharged from the military in 1980. He had gone to hospital 50 times thinking he had a heart attack. He had learned some mental techniques to get the anxiety under control. There was no history of substance abuse. He was employed at that time, although had worked many jobs since leaving the military and never for more than one year straight, saying he apparently left several jobs due to depression. He had been married for 36 years. Diagnosis given was major depressive disorder. 

In subsequent consults there were further details given. Regarding relevant service history, on June 2009 VAMC consult he described having an accidental fall aboard ship, having slipped down a ladder into about 4 feet of oil. He recalled that the ship did not come under fire at any point. Later in the military he was an instructor at a naval base, and states he was constantly obsessing about doing his job. This time speech was clear and thought process linear; mood and affect anxious; suicidal ideation was absent; per patient, the Veteran sometimes had "hallucinations" in which he could hear his mother and father talking to him which happened a couple of times a week; insight was partial; judgment and memory fair. The diagnosis, this time by a psychiatrist, was obsessive compulsive disorder. The Veteran himself also said at that time "I have had problems since the military." An August 2009 VAMC consult indicates recent difficulty at work, thought to be due to his underlying condition, and he was recently fired from his position of 4 years as a salesperson of automotive parts. 

In statement provided upon June 2010, VA Form 9 (Substantive Appeal), the Veteran indicated that he believed his panic attacks were a direct result of the ship being fired upon while anchored in the harbor. The Veteran later clarified that he is not seeking to file specifically a claim for service connection for PTSD.

Based on prior Board remand directive, the AOJ scheduled the Veteran for a VA Compensation and Pension examination.

On examination October 2015, the psychologist indicated at outset the diagnosis of unspecified depressive disorder with anxious distress. Symptoms were stated as being transient with mild to moderate depression (low mood, discouragement, anhedonia, sadness, inappropriate guilt, low motivation, low energy), and anxiety (agitation, edginess, irritability, impatience). The examiner's estimated level of occupational and social impairment was: a mental condition has been formally diagnosed, but symptoms are not severe enough either to interfere with occupational and social functioning or to require continuous medication. The Veteran's history was a good childhood, no problems socially, a number of friends and sports participated in. He stated he entered the Navy in 1971, had no significant problems adjusting to the military, felt he did well in the service. Further stated was he had been married for 42 years, had 2 adult daughters and 4 grandsons. The Veteran's wife accompanied the Veteran to the examination and said their marriage was very good; the Veteran agreed, said they had only had handful of fights over the course of their marriage. He stated relationships with his daughters and grandsons were "wonderful." He stated he had a few good friends he stayed in touch with (talked with them every couple of months), but stated his life "pretty much revolved around his family." Stated he enjoyed music and in spare time built musical instruments, enjoyed reading and going shooting. He stated prior to the military he had no behavioral problems and got average grades in school, dropped out of school in his junior year of high school to join the military (earned his GED after he entered the Navy). When in the military his rate/specialty was operations specialist, highest rank/rank at discharge was E6, and there were no disciplinary problems. He was awarded a meritorious unit commendation and several other decorations. Post-military history was doing sales work after getting out of the military, went into auto parts and auto sales, quit working about 4-5 years ago due to back problems and difficulty lifting items he was required to lift in his job. His wife had recently retired from her job in which she managed/supervised the kitchen and dining hall of an assisted living facility. 

The Veteran further self-reported, he had no family history of mental illness that he knew of and he denied any psychiatric problems or treatment prior to the Navy. He stated he did not seek or receive any psychiatric treatment during the Navy. He stated he began having depression after he got out of the Navy, had difficulty transitioning to civilian life, and had panic attacks/anxiety after he got out and was prescribed amitriptyline and Xanax for anxiety and panic attacks for a period of time after his discharge. He stated his depression and anxiety became more frequent and severe after he began having back problems in 2005 or 2006. He sought mental health treatment in 2009, had a mental health intake and saw psychiatry one time through the VA in May/June 2009, had been prescribed citalopram for mood for about 5-6 years, currently prescribed the medication through his VA primary care doctor. He stated he now had transient, mild to moderate symptoms of depression (low mood, discouragement, anhedonia, sadness, inappropriate guilt, low motivation, low energy) and anxiety (agitation, edginess, irritability, impatience). He stated he had panic attacks in the past but no longer had them, stating he learned to control the attacks. He stated he would never hurt anyone (due to his code of ethics) unless it was "necessary" (for instance, if someone broke into his home, threatened his family, etc.), but if it were necessary, he would not be distressed about or have a problem with hurting or even killing someone, feeling this was a "warriors instinct" he got from the military. He denied any arrests or major legal or behavioral problems before, during, or since his service in the Navy. He denied any alcohol or substance use problems before, during or since his service in Navy. 

The VA examiner indicated the following symptoms were present of a depressed mood, anxiety, and disturbances of motivation and mood. The Veteran was given a brochure containing mental health resource information for veterans (which included suicide/crisis hotline information) during the exam and was encouraged to seek further treatment for his depression and anxiety. He was also encouraged to go to the nearest emergency room and call the suicide hotline in the event that he began to have active suicidal ideation in the future. According to the examiner, there were no other symptoms attributable to mental disorders that were not listed already. It was found that the Veteran met the criteria for a DSM-V diagnosis of unspecific depressive disorder with anxious distress (transient, mild to moderate symptoms of depression and anxiety that did not cause impairment in functioning). 

In an opinion addendum, the VA examiner further found that the condition claimed was less likely than not (less than 50 percent probability) incurred in or caused by the claimed in-service injury, event or illness. The stated rationale was that the Veteran reported that he began having depression and anxiety just after he got out of the military (due to difficulty adjusting to civilian life), and his symptoms were exacerbated/aggravated when he began having back problems in 2005 or 2006.

After reviewing all the evidence on file, the Board concludes that the preponderance of the evidence is against the claim. The Board must reach this determination due to absence of competent evidence demonstrating causal linkage between mental health problems and service; or, otherwise, onset of a qualifying disorder within the applicable presumptive period. 

At a very minimum, the Veteran's own testimony and medical record extracts show to reasonable likelihood, he does have a current mental health disorder. VA treatment providers and evaluators have concurred with diagnoses of depression and likely anxiety disorder. So there is no material question that he has a psychiatric disorder (and other than condition of PTSD, which he has clarified is not a disorder for which he is now seeking entitlement). Indeed, having the claimed disability is the first element under VA law of a claim for service connection. See generally, Moore v. Nicholson, 21 Vet. App. 211, 215 (2007), citing Francisco v. Brown, 7 Vet. App. 55, 58 (1994) ("Compensation for service-connected injury is limited to those claims which show a present disability."); Hicks v. West, 12 Vet. App. 86, 89 (1998); Rabideau v. Derwinski, 2 Vet. App. 141, 144 (1992).

What remains to be determined, and clearly essential to the claim's resolution, is whether the diagnosed mental health disability originated in service or, if having had post-service origin still can be etiologically linked back to the Veteran's service. This is the "causal nexus" requirement. See Watson v. Brown, 4 Vet. App. 309, 314 (1993) ("A determination of service connection requires a finding of the existence of a current disability and a determination of a relationship between that disability and an injury or disease incurred in service."); see also, Duenas v. Principi, 18 Vet. App. 512, 516 (2004). 

On the point of causation, including VA examination completed per prior remand directive, the competent evidence weighs against a finding of service connection. The Veteran's STRs at the outset are negative for signs or symptoms of the a psychiatric disorder of any sort. The Veteran likewise does not report having symptoms then. Consistently the service personnel file is negative for the same, absent a few work performance observations, but it seems the Veteran's overall job performance improved over time; indeed, as reported on more recent mental health evaluations, it appears the Veteran occupationally did quite well in the latter years of his nine-year period of service and despite reporting in one instance "obsessing with doing his job" he did in fact become an instructor on a naval base. Throughout service he received many commendations. None of that information rules out an issue but clearly is relevant, and as such it is considered. 

Moreover, the post-service history does not help show a retrospective ground upon which to find the mental health disability originated in service. Rather, consistently shown is that symptoms began in the years after service. By the Veteran's own report, onset of depressive symptoms and anxiety with periodic panic attacks, treated in part with medication, was following service discharge and from stress with the transition to civilian life. Significantly, there is no showing of a psychosis at this time. There is no presumptive period for anxiety or panic attacks. After the reported initial symptoms, they subsided for many years, and did not return until the year 2005 or so when associated with onset of a separate physical ailment, apparently a back problem. Based on the foregoing, there is nothing inherent in the pattern of symptoms post-service that categorically relates them back to service. Given however, that the Veteran elsewhere has stated on one particular occasion, he had experienced "problems since the military," VA examination was conducted regarding the matter of etiology of a claimed psychiatric disorder. This was also consistent with applicable case law precedent that the Board obtain competent evidence to independently address medical questions. See Rucker v. Brown, 10 Vet. App. 67, 74 (1997), citing Colvin v. Derwinski, 1 Vet. App. 171 (1991) (when the medical evidence of record is insufficient, it is the province of the Board to supplement the record by seeking an advisory opinion, or ordering a medical examination).

To this effect, the October 2015 VA examiner's opinion did not weigh in favor of service connection, finding there less likely than not to exist causation, providing a rationale much in line with what has already been stated that the symptoms did not begin until after the Veteran's service and moreover, were not ongoing afterwards but sporadic. This opinion properly took into account the Veteran's own competent reported history again which corroborated post-service onset, including of reported continuous symptomatology either since service or soon afterwards, and the results of an exhaustive mental status evaluation, records history review, and personal history interview. Essentially, there was no tenable link from post-service symptomatology, back to the Veteran's military service. The opinion proffered was grounded in the stated rationale, clinical expertise as a psychologist and finally review of case background. See Prejean v. West, 13 Vet. App. 444, 448-49 (2000). See also, Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993) ("the probative value of medical opinion evidence is based on the medical expert's personal examination of the veteran, the physician's knowledge and skill in analyzing the data, and the medical conclusion the physician reaches"). Based on the above, the opinion should be given probative weight. The Board recognizes that the Veteran indicates his viewpoint that a presently diagnosed mental condition originated due to his active military service, and it is so that particularly with readily observable medical conditions a lay witness' testimony where credible can be a source of causal nexus evidence. This notwithstanding, given the precision of diagnosis required in this instance for a mental health disorder, the extended interval since service discharge with intervening circumstances, and too, the fact that no actual symptoms were actually noted or indicated in service, a clinical or medical expert's opinion is genuinely required here to address causation as was obtained.

Aside from whether causation is directly proven the Board considers presumptive service connection. While the Veteran's symptoms began within one-year of service discharge and arguably to compensable level (10 percent or greater), there is no indication it was a psychosis, the only type of mental disorder presumed incurred in service. The records show the Veteran had depressive/anxiety symptoms and took anti-anxiety medication, but there is no reason to believe it was anything approaching the definition at 38 C.F.R. § 3.384 of psychosis, such as delusional disorder; schizophrenia or substantially similar disorder; psychotic medication induced disorder. Therefore, presumptive service connection does not apply.

For the reasons, the preponderance of the evidence being unfavorable, and the claim is being denied. VA's benefit-of-the-doubt doctrine is not for application in this situation. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102. 

ORDER

The claim for service connection for generally acquired psychiatric disorder (other than PTSD) is denied.

REMAND

Previously indicated by February 2015 Board remand, the matters of entitlement to service connection for diabetes mellitus type II and by further implication, service connection for hypertension and eye disorder secondary to diabetes, are claimed based upon exposure to Agent Orange. 

There is a presumption of Agent Orange exposure for those who served within the Republic of Vietnam during the Vietnam Era. 38 U.S.C.A. § 1116 (West 2014); 38 C.F.R. § 3.307(a)(6)(iii) (2015). This presumption requires actual service within the territorial landmass of Vietnam from January 9, 1962 through May 7, 1975, and includes service in the waters offshore, or service in other locations if the conditions of service involved duty or visitation to the Republic of Vietnam. 38 C.F.R. § 3.307(a)(6)(iii). 

The Veteran alleges he had a temporary period of service in Vietnam when, in transit to his ship of assignment the U.S.S. Wichita (itself stationed within 1500 yards off the coast of Vietnam) his airplane landed in Vietnam, had a three hour layover and he stepped off the plane and was on Vietnamese soil during the layover. As the Board previously found, the manner by which the Veteran arrived on the ship was unclear, and so, reasonable development measures were needed to investigate whether the Veteran indeed was within the borders of Vietnam at any point. 

Specifically, review of Internet information suggests that the U.S.S. Wichita was off the coast of Vietnam in November 1971 when the Veteran's personnel records reveal he was assigned to the ship. It is noted that the ship had two helicopters assigned to it. He has essentially reported that he was at Tan Son Nhut air base and transferred to there to his ship.

The Board's remand directive was for the AOJ to contact the proper Federal records custodian for available records, including ship's deck logs, that would document if the Veteran (or any sailor in a similar position) would have first had a stopover in Vietnam before arriving aboard the U.S.S. Wichita. 

So far the deck logs have been retrieved from the National Archives and Records Association (NARA). However, the AOJ has not contacted the Joint Services Records Research Center (JSRRC), as was recommended by the Board and consistent too with standard VA adjudication procedure. See VA Adjudication Manual, M21-1, Part IV, Subpart ii, 1.H.2.j (Apr. 29, 2016). This should be accomplished.

Moreover, appropriate review should include consideration of any pertinent histories, to include knowledge of appropriate personnel to detail how a sailor might have reasonably gotten from Southern California to the Wichita in 1971, when the ship was off the coast of Vietnam. This discussion should include whether the trip would more likely have gone through Vietnam, the Philippines, or some other location. 

Accordingly, the case is REMANDED for the following action:

1. Contact the JSRRC and request review of unit history records, and other documentation such as travel vouchers, for purpose of corroborating the manner of the Veteran's arrival aboard the U.S.S. Wichita in November 1971 (on or about November 19, 1971) and specifically, as to whether any sailor would have arrived aboard the U.S.S. Wichita after first traveling to Vietnam. Associate the response received with the Veterans Benefits Management System (VBMS) electronic claims folder. If possible, appropriate histories should be checked to ascertain the most likely travel a sailor would have had from Southern California to the Wichita at that time.

2. Based on all available information including from the JSRRC, or other appropriate authority prepare a formal memorandum indicating whether the Veteran had temporary visitation to Vietnam as described (in furtherance of requested application of presumptive of exposure to Agent Orange).

3. If new evidence indicates likelihood of in-service exposure to Agent Orange, take appropriate measures as warranted to obtain any supplemental medical opinions necessary to decide the claims on appeal.

4. Readjudicate the claims on appeal for entitlement to service connection for diabetes mellitus, hypertension and an eye disorder, based upon all additional evidence received. If any benefit sought on appeal is not granted, the Veteran and his representative should be furnished with a Supplemental Statement of the Case (SSOC) and afforded an opportunity to respond before the file is returned to the Board for further appellate consideration.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other 

appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
MICHAEL D. LYON 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs